(No. 86903.—

# HAROLD WEILAND, Appellant, v. TELECTRONICS PACING SYSTEMS, INC., Appellee.

*Opinion filed December 2, 1999.*

Stephen P. Carponelli and Gregory J. Chinlund, of Carponelli & Krug, of Chicago, and Allison M. Zieve and Brian Wolfman, of Washington, D.C., for appellant.

Paul E. Chronis, of McDermott, Will & Emery, of Chicago, and Michael J. Weber, of Feldman, Gale & Weber, P.A., of Miami, Florida, for appellee.

Sean C. Burke and Thomas L. O'Carroll, of John G. Phillips & Associates, of Chicago, for amicus curiae Illinois Trial Lawyers Association.

JUSTICE HEIPLE delivered the opinion of the court:
The issue in this case is whether section 360k of the Medical Device Amendments of 1976 (MDA) (21 U.S.C. § 360k (1994)) to the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 301 et seq. (1994)) preempts plaintiff's state common law claims for breach of warranty and defective design and construction against Telectronics Pacing Systems, Inc. (TPSI), the distributor of two allegedly defective pacemakers. The circuit court of Cook County held that section 360k preempts plaintiff's claims and granted summary judgment in favor of TPSI. The appellate court affirmed. 302 Ill. App. 3d 175. We reverse, and hold that the Food and Drug Administration's premarket approval of a Class III medical device does not create a specific federal requirement within the meaning of section 360k of the MDA which preempts plaintiff's state common law claims.

## BACKGROUND
Plaintiff was diagnosed with coronary heart disease.

To treat this condition, doctors implanted into plaintiff's body a model 8222 pacemaker distributed in the United States by TPSI. Plaintiff alleges that this pacemaker malfunctioned, and his doctors were forced to replace it with a model 1230 TPSI pacemaker. Plaintiff alleges that he had to undergo surgery a second time to remove the model 1230 pacemaker after it too failed to function properly. Plaintiff filed a complaint against, among others, TPSI alleging state common law claims for breach of warranty and defective design and manufacture of the two pacemakers. The trial court granted TPSI's motion for summary judgment, holding section 360k of the MDA preempts plaintiff's claims. The appellate court affirmed. This court granted plaintiff's petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

The sole issue in this case is whether the MDA preempts plaintiff's state common law claims. Even when a federal statute such as the MDA contains an express preemption provision, the starting point for our analysis is the presumption that " 'the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 135 L. Ed. 2d 700, 715, 116 S. Ct. 2240, 2250 (1996), quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1152 (1947). Such a presumption, the United States Supreme Court has noted, is "consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety." *Lohr*, 518 U.S. at 485, 135 L. Ed. 2d at 715, 116 S. Ct. at 2250. As always, the purpose of Congress is the "ultimate touchstone" of preemption analysis. *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 334 (1996), quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 120 L. Ed. 2d 407, 422, 112 S. Ct. 2608, 2617 (1992).

Section 360k(a) of the MDA provides:

"[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter." 21 U.S.C. § 360k(a) (1994).

This provision, however, is highly ambiguous. *Lohr*, 518 U.S. at 505, 135 L. Ed. 2d at 728, 116 S. Ct. at 2260 (Breyer, J., concurring in part and concurring in the judgment). Section 360k clearly states "that federal requirements may pre-empt state requirements, but it says next to nothing about just when, where, or how they may do so." *Lohr*, 518 U.S. at 505, 135 L. Ed. 2d at 728, 116 S. Ct. at 2260 (Breyer, J., concurring in part and concurring in the judgment). Fortunately, in *Lohr*, the United States Supreme Court developed a standard for determining whether section 360k of the MDA preempts state common law claims. In order for a federal "requirement" to have preemptive effect under section 360k, the *Lohr* Court held, it must be a *specific* requirement which applies to a *particular* device and focuses on the safety and effectiveness of that device. *Lohr*, 518 U.S. at 498, 135 L. Ed. 2d at 723, 116 S. Ct. at 2256. Accord *Goodlin v. Medtronic, Inc.*, 167 F.3d 1367, 1372 (11th Cir. 1999); *Mitchell v. Collagen Corp.*, 126 F.3d 902, 909-10 (7th Cir. 1997).

In *Lohr*, the Supreme Court held that section 360k of the MDA does not preempt state common law claims against the manufacturer of an allegedly defective pacemaker for negligent design, manufacture and assembly as well as strict products liability. *Lohr*, 518 U.S. at 492-502, 135 L. Ed. 2d at 719-26, 116 S. Ct. at 2253-58. The *Lohr* Court's analysis, however, was limited to a

pacemaker which had received FDA approval for marketing under a grandfather provision in the MDA which requires only that the manufacturer demonstrate that its medical device is "substantially equivalent" to a medical device that was on the market prior to the adoption of the MDA in 1976. 21 U.S.C. § 360e(b)(1)(B) (1994). TPSI's pacemakers, however, did not receive approval from the FDA under this section of the MDA. The holding in *Lohr*, therefore, does not definitively resolve whether the MDA preempts plaintiff's claims in this case.

In order to determine whether section 360k preempts plaintiff's claims in this case, we must examine the process by which the FDA approved TPSI's request to market its pacemakers. The MDA classifies medical devices into three categories based on the risk they pose to the public. Class III medical devices are devices which are "purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health" or "present[ ] a potential unreasonable risk of illness or injury." 21 U.S.C. § 360c(a)(1)(C)(ii) (1994). The FDA classifies pacemakers as Class III devices. 21 C.F.R. § 870.3610(b) (1995). Before a manufacturer can market a Class III medical device which is not "substantially equivalent" to a medical device on the market prior to the enactment of the MDA, the manufacturer must provide the FDA with a "reasonable assurance of the [device's] safety and effectiveness." 21 U.S.C. § 360c(a)(1)(C)(i) (1994). This "premarket approval" process is a rigorous one. A manufacturer seeking premarket approval must submit to the FDA detailed information regarding the safety and effectiveness of the device, and the FDA spends an average of 1,200 hours reviewing each submission for premarket approval. *Lohr*, 518 U.S. at 477, 135 L. Ed. 2d at 710-11, 116 S. Ct. at 2246-47. Both of TPSI's pacemakers implanted in plaintiff's body received premarket approval from the FDA.

TPSI argues that the FDA's premarket approval of both pacemakers implanted in plaintiff's body constitutes federal requirements which preempt plaintiff's state common law claims. As stated above, in order for a federal requirement to have preemptive effect under section 360k, it must be a *specific* requirement which applies to a *particular* device and focuses on the safety and effectiveness of that device. The premarket approval process unquestionably focuses on the safety and effectiveness of a particular Class III medical device; therefore, our inquiry is limited to whether premarket approval of a Class III medical device imposes a specific federal requirement. We hold that it does not.

The FDA's premarket approval of a Class III medical device represents "only a finding that the manufacturer's proposal to market a device has reasonably assured the FDA of the device's safety and effectiveness." *Goodlin*, 167 F.3d at 1375. The design of the pacemakers at issue in this case originated solely with the manufacturer of the device, not the FDA. The FDA did not require the pacemakers to take any particular form for any particular reason. See *Lohr*, 518 U.S. at 493, 135 L. Ed. 2d at 720-21, 116 S. Ct. at 2254. The FDA merely gave permission to market the design for the pacemaker submitted by the manufacturer. Premarket approval imposes no ascertainable substantive requirement on the manufacture or design of the device. *Goodlin*, 167 F.3d at 1375.[1] If the FDA determines that particular design or manufacturing specifications for pacemakers are warranted, the FDA

---

[1] TPSI emphasizes that the premarket approval process is more rigorous than the "substantial equivalence" determination for medical devices grandfathered by the FDA under section 360e(b)(1)(B) (21 U.S.C. § 360e(b)(1)(B) (1994)). The mere fact that the PMA process is more rigorous and intensive than the FDA's review under section 360e(b)(1)(B), however, still does not prove that premarket approval imposes a "specific" federal requirement.

has the authority to promulgate specific requirements independent of the premarket approval process. See, *e.g.*, 21 C.F.R. § 861.1(b)(3) (1995) (providing for mandatory performance standards for Class III medical devices). Thus, for example, if the FDA promulgated a rule requiring all manufacturers to use ceramic insulators for pacemakers, section 360k would preempt plaintiff's claim in this case that TPSI's pacemakers were defective because ceramic insulators are susceptible to cracking. See *Lohr*, 518 U.S. at 504, 135 L. Ed. 2d at 727, 116 S. Ct. at 2259 (Breyer, J., concurring in part and concurring in the judgment) (arguing a hypothetical FDA regulation requiring a two-inch wire for a certain component of hearing aids would preempt a state common law claim which premises liability on the manufacturer's failure to use a one-inch wire). TPSI, however, has not identified a single regulation or order promulgated by the FDA which established a specific requirement for its pacemakers.

TPSI insists that its interpretation of section 360k would provide manufacturers of medical devices with only a limited form of immunity from state common law claims for injuries caused by defective medical devices. TPSI argues that section 360k of the MDA would not preempt state common law claims that a manufacturer deviated from the specific design and manufacturing methods approved by the FDA when it granted premarket approval for the device. TPSI's argument is specious. TPSI's interpretation of section 360k would have "the perverse effect of granting complete immunity from design defect liability to an entire industry that, in the judgment of Congress, needed more stringent regulation in order 'to provide for the safety and effectiveness of medical devices intended for human use.'" *Lohr*, 518 U.S. at 487, 135 L. Ed. 2d at 716-17, 116 S. Ct. at 2251 (plurality opinion), quoting Pub. L. No. 94—295, 90 Stat. 539 (1976) (preamble to MDA). Such a sweeping inter-

pretation of federal preemption under section 360k would also produce a serious intrusion into state sovereignty. *Lohr*, 518 U.S. at 488, 135 L. Ed. 2d at 717-18, 116 S. Ct. at 2252 (plurality opinion). The premarket approval process allows the FDA to assure the minimal safety of medical devices which are marketed for human consumption; the premarket approval process simply does not address the appropriate standards of liability once the medical device enters the market. *Goodlin*, 167 F.3d at 1378. There is simply no support for TPSI's assertion that Congress intended to preempt almost all state common law claims against the manufacturers of medical devices which receive premarket approval from the FDA. *Goodlin*, 167 F.3d at 1378. In the absence of a clear and manifest congressional intent to create the sweeping preemption of state common law claims suggested by TPSI, we hold that the FDA's premarket approval of a Class III medical device does not establish a specific federal requirement which preempts plaintiff's state common law claims. *Kernats v. Smith Industries Medical Systems, Inc.*, 283 Ill. App. 3d 455 (1996), to the extent it holds that premarket approval review constitutes a specific federal requirement within the meaning of section 360k, is overruled.

We acknowledge that the Seventh Circuit Court of Appeals has also addressed this issue and reached a result contrary to our decision today. See *Mitchell v. Collagen Corp.*, 126 F.3d 902, 911 (7th Cir. 1997) (holding "[premarket approval] process constitutes a specific federal regulation of the product"). TPSI insists that in the interest of uniformity, this court should follow this precedent from the Seventh Circuit. Uniformity is an important consideration when state courts interpret federal statutes. *Wilson v. Norfolk & Western Ry. Co.*, 187 Ill. 2d 369, 383 (1999); *Busch*, 169 Ill. 2d at 335 (noting decisions of federal courts interpreting federal statutes are

controlling upon Illinois courts). Nonetheless, a concern for uniformity does not command this court's adherence to the Seventh Circuit's precedent in this case. The Seventh Circuit Court of Appeals exercises no appellate jurisdiction over this court. See *People v. Kidd*, 129 Ill. 2d 432, 457 (1989). This court need not follow Seventh Circuit precedent interpreting a federal statute where, as here, the Supreme Court has not ruled on the question presented, there is a split of authority among the federal circuit courts of appeals, and, we believe, the case from the Seventh Circuit was wrongly decided. See *Wilson*, 187 Ill. 2d at 381 ("elect[ing]" to follow Seventh Circuit's interpretation of the Federal Employers' Liability Act (FELA) where there is a conflict among lower federal courts on the issue and the Seventh Circuit's analysis is "reasonable and logical" and consistent with other United States Supreme Court precedent).

## CONCLUSION

For the reasons stated, the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

*Reversed and remanded.*