FOURTH DIVISION

APRIL 6, 2000

No. 1-99-0012 

REX R. SPRIETSMA, Administrator of the ) Appeal from the

Estate of JEANNE SPRIETSMA, Deceased, ) Circuit Court of

) Cook County.

Plaintiff-Appellant, ) 

)

)

)

MERCURY MARINE, a division of )

BRUNSWICK CORPORATION, a corporation, ) The Honorable

) Joseph N. Casciato,

Defendant-Appellee. ) Judge, Presiding.

JUSTICE BARTH delivered the opinion of the court:

The plaintiff, Rex Sprietsma, as administrator of the estate of his deceased wife, Jeanne, filed this wrongful death action against, 
inter
 
alia
, Mercury Marine, a division of Brunswick Corporation (Mercury), for the benefit of himself, the surviving spouse, and his son, Ross.  Jeanne died after falling from a motor boat and being struck by the propeller blades of the boat's outboard engine.  That engine was not equipped with a propeller guard.

Mercury moved to dismiss pursuant to section 2-619 (735 ILCS 5/2-619 (West 1998)), on the ground that the common law tort claims on which Sprietsma's wrongful death action is based are preempted by provisions of the Federal Boat Safety Act (FBSA or Act) (46 U.S.C. § 4301 
et
 
seq
. (1971)).  The trial court granted the motion, this appeal followed, and we now affirm.

 

 
Background

A.  Facts of this case

In July of 1995, plaintiff's decedent, Jeanne Sprietsma, was a passenger on board a motor boat.  While the driver was in the process of making a right turn, Jeanne fell from the boat.  Once in the water, she was repeatedly struck by the propeller blades of the boat's outboard engine.  This caused her to suffer serious injury and resulted in her death shortly thereafter.  The engine, designed by Mercury, was not equipped with a propeller guard.

Sprietsma filed a wrongful death action against, 
inter
 
alia
, Mercury to recover damages for the personal injuries of Jeanne, and for the loss of consortium suffered by both himself and his son Ross.  Sprietsma's complaint alleged that Mercury's engine was defectively designed in that it was not equipped with propeller guards.  Mercury moved for dismissal pursuant to section 2-619 (735 ILCS 5/2-619 (West 1998)) on the ground that Sprietsma's claims were preempted by the FBSA.

Finding that Sprietsma's cause of action was impliedly preempted by the FBSA, the trial court granted Mercury's motion to dismiss on November 20, 1998.  The court included language in its order that it was final and appealable pursuant to Illinois Supreme Court Rule 304(a).

On appeal, Sprietsma contends that the trial court erred in granting dismissal, since the FBSA does not expressly or

impliedly preempt state law tort claims based on the absence of a propeller guard.  In support of his contention, Sprietsma asserts: (1) if Congress had intended to preempt common law claims, it would have explicitly done so in the FBSA's preemption clause; (2) even if the Act's preemption language ordinarily includes common law claims, the Act's savings clause alters this conclusion; (3) this court is required to apply a presumption against finding preemption; and (4) claims relating to propeller guards cannot be in conflict with federal law where there is no federal law on the subject.

B.  The Federal Boat Safety Act

At issue is the construction of sections 4306 and 4311(g) of the FBSA, otherwise known as the preemption and savings clauses respectively. Section 4306 provides:

"Unless permitted by the Secretary under section

4305 of this title, a State or a political sub-

division of a State may not establish, continue 

in effect, or enforce a law or regulation

establishing a recreational vessel or associated

equipment performance or other safety standard

or imposing a requirement for associated equipment

(except insofar as the State or political sub- 

division may, in the absence of the Secretary's

disapproval, regulate the carrying or use of 

marine safety articles to meet uniquely hazardous

conditions or circumstances within the State)

that is not identical to a regulation prescribed

under section 4302 of this title."  46 U.S.C. § 4306.

And section 4311(g) provides:

"[c]ompliance with this chapter or standards,

regulations, or orders prescribed under this 

chapter does not relieve a person from

liability at common law or under State law."

46 U.S.C. § 4311(g).

The FBSA was enacted in 1971 in part to "improve boating safety by requiring manufacturers to provide safer boats and boating equipment to the public through compliance with safety standards to be promulgated by the Secretary of Transportation."  See P.L. 92-75, Federal Boat Safety Act of 1971, S. Rep. No. 92-

248, 
reprinted
 
in
 1971 U.S.C.A.N. 1333.  To implement that goal, the Act grants the Secretary the exclusive authority to prescribe regulations establishing minimum safety standards for recreational boats.  See 46 U.S.C. § 4302.  To facilitate this duty, the Secretary has the option to delegate regulatory functions to a designated agency that operates under [his or her] supervision.  See 46 U.S.C. § 4303(a).  The United States Coast Guard has been designated as that agency.  See 49 C.F.R. § 1.46(n)(1) (1996).

Pursuant to the Act, the Coast Guard must consult with the National Boating Safety Advisory Council (NBSAC) concerning the need for regulation in a given area and the extent to which proposed regulations will contribute to recreational boating safety.  See 46 U.S.C. § 13110.  

C.  Regulating the use of propeller guards

In 1988, the Coast Guard directed the NBSAC to examine the feasibility and potential safety advantages and disadvantages of propeller guards.  The NBSAC appointed a Propeller Guard Subcommittee for the purpose of reviewing and analyzing data relating to recreational boating accidents in which persons in the water were struck by boat propellers.  See National Boating Safety Advisory Council, Report of the Propeller Guard Subcommittee (1989).  The NBSAC also asked the Subcommittee to consider whether "the Coast Guard [should] move towards a federal requirement for some form of propeller guard."  See Report of the Propeller Guard Subcommittee, at Appendix A.  

After a year-long study and three different public hearings on the matter, the Subcommittee reached the unanimous conclusion that the "U.S. Coast Guard should take no regulatory action to require propeller guards."  See Report of the Propeller Guard Subcommittee, Nov. 7, 1989, at 24.  The Subcommittee determined that "[t]he development and use of devices such as 'propeller guards' can *** be counterproductive and can create new hazards of equal or greater consequence."  See Report of the Propeller Guard Subcommittee, Nov. 7, 1989, at 23.  Among other negative effects, propeller guards were found to have the potential to decrease an operator's ability to maintain control over the boat at "normal" speeds, increase the probability of striking a body in the water, and create a possibility of causing greater injury to those struck.  See Report of the Propeller Guard Subcommittee, Nov. 7, 1989, at 23-24.

The Subcommittee's recommendation that no regulatory action be taken was accepted by both the NBSAC and the Coast Guard.  See Letter from Robert T. Nelson, Rear Admiral, U.S.Coast Guard, Chief, Office of Navigation, Safety and Waterway Services to A. Newell Garden, Chairman, National Boating Safety Advisory Council (Feb. 1, 1990).

  Analysis

We review 
de
 
novo
 the grant of a motion brought pursuant to 2-619.  
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116, 619 N.E.2d 732 (1993).  The Supremacy clause of the Constitution provides that "the laws of the United States ... shall be the supreme Law of the Land *** any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  Pursuant to the Supremacy Clause, Congress has the authority to preempt state law.  
Louisiana Public Service Comm'n v. FCC
, 476 U.S. 355, 90 L. Ed. 2d 369, 381, 106 S. Ct. 1890, 1898 (1986).  "In determining whether Congress has preempted state law, our task is to discern congressional intent."  
Morales v. Trans World Airlines, Inc.
, 504 U.S. 374, 381-82, 119 L. Ed. 2d 157, 167, 112 S. Ct. 2031, 2036 (1992).  A court interpreting a federal statute pertaining to a subject traditionally governed by state law (such as safety) will be reluctant to find preemption.  
CSX Transp. Inc. v. Easterwood
, 507 U.S. 658, 663-64, 123 L. Ed. 2d 387, 396, 113 S. Ct. 1732, 1737 (1993); 
Weiland v. Teletronics Pacing Systems,
 
Inc.
, 188 Ill. 2d 415, 416, 721 N.E.2d 1149 (1999).  In fact, preemption will be found only in those situations where it is "the clear and manifest purpose of Congress."  
CSX
, 507 U.S. at 664, citing 
Rice v. Santa Fe Elevator Corp.
, 331 U.S. 218, 230, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1152 (1947).  Federal preemption of state law can occur in three circumstances: (1) express preemption, where Congress explicitly preempts state law; (2) implied preemption, where Congress has occupied the entire field (field preemption); and (3) implied preemption, where there has been an actual conflict between federal and state law (conflict preemption).  
English v. General Elec. Co.
, 496 U.S. 72, 78-79, 110 L. Ed. 2d 65, 74-75, 110 S. Ct. 2270, 2275 (1990).

Preliminarily, we note that the second district of this court has considered the precise issue with which we are now presented in 
Farner v. Brunswick Corp.
, 239 Ill. App. 3d 885, 607 N.E.2d 562 (1992).  As in the case 
sub
 
judice
, the plaintiff in 
Farner
 filed suit after being injured by a propeller on a boat motor designed and manufactured by the defendant.  
Farner
, 239 Ill. App. 3d at 887.  The trial court granted summary judgment in favor of the defendant manufacturer, finding that the FBSA preempted "plaintiff's claims insofar as they [were] based on a failure to provide a propeller guard."  
Farner
, 239 Ill. App. 3d at 887.  The second district affirmed, finding that the language of the Act expressly prohibited a common law damage action for failure to provide a propeller guard where the United States Coast Guard has made the decision not to require them.  
Farner
, 239 Ill. App. 3d at 892-93.  

Next, we acknowledge the well-settled proposition in Illinois that decisions of the federal courts interpreting a federal act, such as the FBSA, are controlling upon our state courts, "in order that the act be given uniform application."  See 
Wilson v. Norfolk & Western Ry. Co.
, 187 Ill. 2d 369, 383, 718 N.E.2d 172 (1999); 
Busch v. Graphic Color Corp.
, 169 Ill. 2d 325, 335, 662 N.E.2d 397 (1996); 
Boyer v. Atchison, Topeka &
 
Santa Fe Ry. Co.
, 38 Ill. 2d 31, 34, 230 N.E.2d 173 (1967).  But see 
Weiland
, 188 Ill. 2d at 423 (Illinois Supreme Court not bound by Seventh Circuit's interpretation of federal statute where the U.S. Supreme Court has not ruled on the question presented, there is a split of authority among the federal circuit courts of appeals, and court believes the case from the Seventh Circuit was wrongly decided). 

I.  Federal cases interpreting the FBSA 

In 
Carstensen v. Brunswick Corp.
, 49 F.3d 430 (8th Cir. 1995), the Eighth Circuit Court of Appeals considered the preemptive scope of the FBSA on facts similar to those before this court.  There, the plaintiff was a boat passenger who sustained injury when she fell from the boat and was struck by the engine's propeller.  
Carstensen
, 49 F.3d at 430.  She filed suit, alleging that the boat's manufacturer was negligent for having failed to install a propeller guard.  
Carstensen
, 49 F.3d at 430.  The Eighth Circuit held that the plaintiff's claims were expressly preempted by the language of the FBSA's preemption clause, section 4306.  
Carstensen
, 49 F.3d at 431.  That clause provides, in relevant part:

"[a] State may not establish, continue in

effect, or enforce a law or regulation

establishing a recreational vessel or

associated equipment safety standard or

imposing a requirement for such equipment ***

that is not identical to a regulation prescribed 

Under section 4302 of this title." 46 U.S.C. § 4306.

Like Sprietsma, the plaintiff in 
Carstensen
 contended that the language of the FBSA's preemption clause fails to make explicit mention of common law actions, and thus Congress must not have intended to preempt them.  The court responded by stating that while the language of the Act's preemption clause does not specifically refer to common law actions, it is very broad.  
Carstensen
, 49 F.3d at 431-32.  Such broad language, the court explained, "does not admit of [a] distinction between positive enactments and common law."  
Carstensen
, 49 F.3d at 432 (quoting 
Cipollone v. Liggett Group, Inc.
, 505 U.S. 504, 522, 120 L. Ed. 2d 407, 426, 112 S. Ct. 2608, 2620 (1992)).  Accordingly, the court concluded, the language used by Congress expressly indicates an intent to preempt all state laws or regulations that are not identical to a regulation promulgated under the Act.  
Carstensen
, 49 F.3d at 431.  The Act does not contain a propeller guard regulation or requirement, and thus, by the explicit language of the preemption clause, states are forbidden from establishing one.  This must mean, the court concluded, that common law damage actions are likewise forbidden since "[a]llowing a jury to assess damages for failure to install a propeller guard would create, in effect, a state requirement that guards be installed."  
Carstensen
, 49 F.3d at 432.  See generally 
Cipollone
, 505 U.S. at 621 ("[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief"); and 
Medtronic Inc. v. Lohr
, 518 U.S. 470, 509, 135 L. Ed. 2d 700, 730, 116 S. Ct. 2240, 2262 (1996) ("state common law damages actions do impose requirements and are therefore preempted where such requirements would differ from those imposed by [statute]") (O'Connor, J., concurring in part and dissenting in part).

As does Sprietsma here, the plaintiff in 
Carstensen
 pointed to the Act's savings clause, section 4311(g), arguing that its language alters the above analysis.  The Act's savings clause provides:

"[c]ompliance with this chapter or standards,

regulations, or orders prescribed under this

chapter does not relieve a person from liability 

at common law or under State law." 46 U.S.C. § 4311(g).

Considering this argument, the court first looked to the legislative history of the savings clause and noted that its stated purpose "is to assure that in a product liability suit, mere compliance by a manufacturer with the Act will not be a complete defense to liability."  
Carstensen
, 49 F.3d at 432 (quoting S.Rep. No. 248 92nd Cong. 1st Sess., 
reprinted
 
in
 1971 U.S.C.C.A.N. 1333, 1352).  The stated purpose of 4311(g), the court explained, offers guidance as to how to harmonize or balance the language of the preemption clause, which forbids states from imposing requirements not identical to those in the Act, with that of the savings clause, which appears to preserve at least some common law claims, but cannot be read to preserve those that would conflict with other sections of the Act.  
Carstensen
, 49 F.3d at 432.  The balance the court struck was to interpret the savings clause as preserving common law claims for defectively designed products that are actually installed.  
Carstensen
, 49 F.3d at 432.  

Thus, for example, since the Act does not require that propeller guards be installed at all, there can be no cause of action against a manufacturer for failing to install them.  However, since the Act does not prohibit manufacturers from installing propeller guards, those manufacturers who choose to install them would not be permitted to use compliance with the Act as a 
per
 
se
 defense to claims that those guards are  defective.  
Carstensen
, 49 F.3d at 432.  We note that several other courts which have interpreted the FBSA have reached an identical conclusion.  See e.g., 
Moss v. Outboard Marine Corp.
, 915 F.Supp. 183, 187 (E.D.Cal. 1996) (FBSA savings clause has no application where manufacturer chooses not to install a propeller guard); 
Shields v. Outboard Marine Corp.
, 76 F.Supp. 1579, 1581-

82 (M.D.Ga. 1991) (same); 
Mowery v. Mercury Marine
, 773 F.Supp. 1012, 1017 (N.D.Ohio 1991) (boat manufacturer not liable for failure to install device it had a choice not to install, but analysis would look different if manufacturer chose to install defective product); 
Farner v. Brunswick Corp.
, 239 Ill. App. 3d 885, 892 (2nd Dist. 1992) (same).  See also 
Mulhern v. Outboard
 
Marine Corp.
, 146 Wis.2d 604, 617 (Ct.App. 1988) (claims based on defective seat not preempted by FBSA) and 
Rubin v. Brutus Corp.
, 487 So.2d 360, 365 (Fla.Dist.Ct.App. 1986) (claims based on defective throttle not preempted).

Two years after the decision in 
Carstensen
, the Eleventh Circuit Court of Appeals considered FBSA preemption of common law claims in 
Lewis v. Brunswick Corp.
, 107 F.3d 1494 (1997).  In 
Lewis
, the parents of a woman who died after she was thrown from a boat and struck by its propeller brought suit against the manufacturer of the engine.  
Lewis
, 107 F.3d at 1494.  As in the instant case, the plaintiffs in 
Lewis
 alleged that the boat's engine was defective due to its lack of propeller guards.  
Lewis
, 107 F.2d at 1494.  The district court granted the defendant manufacturer's motion for summary judgment, finding that the plaintiff's claims were preempted by the FBSA, and the Eleventh Circuit affirmed.  
Lewis
, 107 F.3d at 1494.

The 
Lewis
 court achieved the same result as 
Carstensen
, i.e. dismissal of the common law claim, but its analysis differed.  While 
Carstensen
 holds that common law claims are expressly preempted, the Eleventh Circuit based its finding of preemption on an implied rather than express preemption theory.  
Lewis
, 107 F.3d at 1503.  The court characterized its implied preemption analysis as a determination whether plaintiffs' claims "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," and concluded that they did.  
Lewis
, 107 F.3d at 1501 (citing 
Freightliner Corp. v. Myrick
, 514 U.S. 280, 287, 131 L. Ed. 2d 385, 392, 115 S. Ct. 1483, 1487 (1995)).

We find the discussion in the 
Lewis
 opinion regarding the nature of FBSA preemption to be well-reasoned, but we nevertheless accept as determinative the Eighth Circuit's analysis in 
Carstensen
, and therefore hold that the FBSA expressly preempts common law claims for failure to install propeller guards.  We note that a decided majority of the courts to have considered our issue have found express preemption.  See e.g., 
Farner v. Brunswick Corp.
, 239 Ill. App. 3d 885, 892 (2nd Dist. 1992) (section 4306 interpreted as a "specific expression of congressional intent to preempt a common law tort action); 
Ryan v. Brunswick Corporation
, 557 N.W.2d 241, 551 (Mich. 1997) ("we join a long line of cases that have similarly held that common law *** actions alleging liability for failing to incorporate a propeller guard *** are expressly preempted under the FBSA").  Accord, 
Moss v. Outboard
 
Marine Corp.
, 915 F.Supp. 613, 615 (E.D.Cal. 1996); 
Shields v.
 
Outboard Marine Corp.
, 776 F.Supp. 1579, 1581 (M.D.Ga. 1991); 
Shield v. Bayliner Marine Corp.
, 822 F.Supp. 81, 84 (D.Conn. 1993); 
Mowery v. Mercury Marine
, 773 F.Supp. 1012, 1017 (N.D.Ohio 1991).

  II.  FBSA preemption in light of U.S. Supreme Court decisions

Because we hold that the FBSA expressly and explicitly preempts Sprietsma's claims, we do not consider whether implied preemption exists.
(footnote: 1) See 
Cipollone
, 505 U.S. at 518 (when Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue  there is no need to infer congressional intent to preempt state laws from the substantive provisions of the legislation).

Although two federal circuits have construed the FBSA, the U.S. Supreme Court has not yet had occasion to do so.
(footnote: 2)  However, Sprietsma directs this court's attention to 
Freightliner Corp. v.
 
Myrick
, 514 U.S. 280, 131 L. Ed. 2d 385, 115 S. Ct. 1483 (1995), in which the Court construed the Vehicle Safety Act, 15 U.S.C.A. § 1381 
et
 
seq
., a similar, through by no means analogous statute.  Sprietsma urges that the holding in 
Myrick
 prevents this court from finding preemption in the absence of a promulgated regulation with respect to propeller guards.  Furthermore, according to Sprietsma, 
Myrick
 establishes a "stricter" preemption analysis, under which this court must find that his claims are not preempted.  See 
Moore v. Brunswick Bowling & Billiards
, 889 S.W.2d 246, 252 (Tex 1994) (finding early decisions construing the FBSA unpersuasive in light of the decision in 
Myrick
).

Having carefully considered 
Myrick
, we find that the facts and reasoning in that case do not preclude a finding of preemption in this case, and in fact, support the determination that Sprietsma's state common law claims are preempted.  See 
Gracia v. Volvo Europa Truck, N.V.
, 112 F.3d 291, 296 (7th Cir. 1997) (holding plaintiff's product liability claims against windshield retention system manufacturer were preempted by the Vehicle Safety Act, and finding that 
Myrick
 supported this conclusion).

In 
Myrick
, the Supreme Court considered whether common law claims based on the failure to install antilock brakes were expressly or impliedly preempted by the Vehicle Safety Act.  
Myrick
, 514 U.S. at 282.  The preemption clause in that act provided: 

"Whenever a Federal motor vehicle safety 

standard established under this subchapter

is in effect, no State or political sub-

division of a State shall have any 

authority either to establish, or to continue 

in effect, with respect to any motor vehicle

or item of motor vehicle equipment any

safety standard applicable to the same aspect

of performance of such vehicle or item of 

equipment which is not identical to the

federal standard." 15 U.S.C.A. § 1392(d) (1982).

The plaintiffs in 
Myrick
 sued two different motor vehicle manufacturers, alleging that the absence of an antilock braking system in their tractor trailers constituted a negligent design

defect.  
Myrick
, 514 U.S. at 282.  The defendant manufacturers responded that failure to install claims were preempted because the relevant agency had indicated its intent to regulate braking systems by promulgating a regulation on that subject.  
Myrick
, 514 U.S. at 286.  Although that regulation was subsequently struck down by the Ninth Circuit, the defendants argued it still had preemptive effect, since it demonstrated the agency's intent to forbid state regulation with regard to braking systems.  
Myrick
, 514 U.S. at 286.  The Supreme Court rejected the defendants' argument.

The Court pointed out that there was no evidence that the Vehicle Safety Act gave the relevant federal agency exclusive authority to issue safety standards.  
Myrick
, 514 U.S. at 286.  In fact, the Court explained that the preemption clause in that act clearly implied that states could impose safety standards on auto manufacturers until the federal government came forward with a different standard.  Therefore, under the Vehicle Safety Act regulatory scheme, the absence of regulation failed to have preemptive effect since, if there was no federal regulation on point, state law remained intact.  
Myrick
, 514 U.S. at 286.  Moreover, the Court pointed out, this was not a situation in which the relevant agency had reached an authoritative decision not to regulate.  
Myrick
, 514 U.S. at 286-87.  Rather, the agency determined that a regulation was appropriate and even promulgated one, which was simply not in effect at the time of the lawsuit.  
Myrick
, 514 U.S. at 287.  

In contrast to section 1392(d) of the Vehicle Safety Act, section 4306 of the FBSA does not grant states the authority to regulate where the federal government does not.  In fact, the language of the FBSA explicitly provides that states are forbidden from regulating 
at all
 unless there is an identical federal regulation.  See 43 U.S.C. § 4306 (emphasis added).  In this case, the agency granted rulemaking authority, the Coast Guard, investigated the possibility of promulgating a propeller guard regulation, and concluded that no such regulation was warranted.  Accordingly, no such regulation was promulgated.  The Supreme Court has held that "a federal decision to forgo regulation in a given area may imply an authoritative federal determination that the area is best left unregulated, and in that event would have as much preemptive force as a decision to regulate.  
Bonito Boats, Inc. v. Thunder Craft Boats, Inc.
, 489 U.S. 141, 151-52, 103 L. Ed. 2d 118, 135, 109 S. Ct. 971, 977-78 (1989).  See also 
Myrick
, 514 U.S. at 286-88 (acknowledging that this is especially true where congress intended to centralize all authority over the regulated area in one decisionmaker: the federal government).  

Finally, we note that out of the thirteen courts that have considered FBSA preemption of common law claims based on lack of a propeller guard, only two have ruled that the Act does not preempt such claims.  See 
Moore v. Brunswick Bowling & Billiards
, 889 S.W.2d 246 (Tex. 1994) and 
Ard v. Jensen
, 996 S.W.2d 594 (Mo.Ct.App. 1999).  We do not find those two state court pronouncements persuasive, particularly in light of the U.S. Supreme Court's holding in 
Myrick
.  Furthermore, we see in those opinions no basis for a departure from the decisions of every federal court to have considered the issue, or from this court's holding in 
Farner
.

     
We are mindful of the presumption against a finding of federal preemption where the matter is one traditionally governed by state law, such as safety.  However, in this case, we determine that the presumption has been overcome by the uniformity of the federal court decisions construing the FBSA.  There is as yet no definitive ruling on the scope of preemption of state common law claims under the FBSA by the Supreme Court.  That being the case, we believe our holding is buttressed by the inferences to be drawn from the Court's recent preemption analyses in 
Myrick
 and 
Medtronic
 as discussed above.

Conclusion

For the reasons stated herein, the trial court's order which dismissed Sprietsma's complaint as to Mercury is affirmed.

Affirmed.

HOFFMAN, P.J., and SOUTH, J., concur.   

FOOTNOTES
1:
Although the trial court found implied preemption, we are not bound by that conclusion, and may sustain the judgment on any ground warranted by the record.  
People ex rel. Waller v. 1990
 
Ford Bronco
, 158 Ill. 2d 460, 463 (1994).

2:
A petition for certiorari was granted in 
Lewis
 (522 U.S. 978, 139 L. Ed. 2d 337, 118 S. Ct. 439 (1997)) but we were informed by counsel at oral argument that the appeal was dismissed by agreement of the parties (523 U.S. 1113, 140 L. Ed. 2d 933, 118 S. Ct. 1793 (1998)).