CLAUDIA MEJIA, Independent Adm'r of the Estate of Luis G. Mejia, Deceased, Plaintiff-Appellant, v. WHITE GMC TRUCKS, INC., formerly known as White Trucks of Chicago, Inc., Defendant (Volvo GM Heavy Truck Corporation, Defendant-Appellee).

First District (3rd Division)   No. 1—00—0073

Opinion filed December 31, 2002.

WOLFSON, J., dissenting.

Michael W. Rathsack and Montgomery C. Mackey, both of Chicago, for appellant.

Wayne F. Plaza, Charles A. LeMoine, and Daniel M. Noland, all of Rooks, Pitts & Poust, of Chicago, for appellee.

JUSTICE HALL delivered the opinion of the court:

The plaintiff, Claudia Mejia, independent administrator of the estate of Luis G. Mejia, deceased, appeals from an order of the circuit court of Cook County granting partial summary judgment to defendant Volvo GM Heavy Truck Corporation on count I of the plaintiff's amended complaint.

On January 4, 1993, Luis G. Mejia was killed when the garbage truck he was operating struck a median, collided with a van, became airborne and landed on its passenger side. Mr. Mejia was found upside down on the passenger side with his head crushed.

The truck in this case was equipped with a passenger-side door that folded back. It was designed for situations in which the person on the passenger side was in and out of the truck every 100 or 200 feet. The truck in this case was designed so that it could be operated from either side of the truck. The passenger-drive side was primarily made for low speed operation, in this case for picking up waste.

On August 11, 1999, the plaintiff filed an amended complaint against the defendant.[1] Count I alleged that Mr. Mejia was killed when his seat belt released during the accident, causing him to be thrown to

---

[1]The original complaint was filed on January 3, 1995, by Phillip E. Solzan as independent administrator of Mr. Mejia's estate. On February 3, 1995, Mr. Solzan resigned, and the plaintiff was appointed independent administrator of

his right and partially ejected through the right-side door of the truck cab. The plaintiff further alleged that the defendant designed, manufactured, distributed and sold the truck that Mr. Mejia was operating at the time of his death. The plaintiff alleged that the truck was in an unreasonably dangerous condition, in part, because:

> "d) The latch handle on the exterior of passenger side door of the cab was exposed and unguarded so that incidental contact with the handle would release the latch and open the door.
>
> e) The latch on the interior of the passenger side door was exposed and unguarded so that incidental contact would release the door and cause it to open.
>
> f) The passenger door was flimsy and subject to excessive deformation so that damage to the door would create an opening for partial ejection or would cause the latch to separate from the latch plate releasing the door and causing it to open."[2]

Count II of the amended complaint alleged a survivor action.

On August 27, 1999, the defendant filed a motion for partial summary judgment addressed to the plaintiff's allegations of negligence in connection with the door latches on the basis of federal preemption. On October 7, 1999, the circuit court entered partial summary judgment for the defendant on count I of the amended complaint. The circuit court also granted the defendant summary judgment as to count II of the amended complaint. On January 4, 2000, pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), the circuit court found that there was no just reason to delay enforcement or appeal of its October 7, 1999, order. The plaintiff filed a timely notice of appeal.

The sole issue on appeal is whether federal law preempts the plaintiff's allegations of negligence with regard to the door and the latches on the truck.

Prior to turning to the merits of this appeal, we find it necessary to comment on the circuit court's statement in its order of January 4, 2000, to the effect that it was making its October 7, 1999, order a final one by making a finding pursuant to Rule 304(a). Such a statement shows a continuing misconception as to the nature of final orders for purposes of appeals pursuant to Rule 304(a).

■ A Rule 304(a) finding does not make a nonfinal order appealable; rather, a Rule 304(a) finding makes a final order appealable

---

the estate. On December 18, 1998, White GM Trucks, Inc., was dismissed from the suit.

[2]The plaintiff's allegations as to defects in the seat belt are not at issue in this appeal.

where there are multiple parties or claims in the same action. *Blott v. Hanson*, 283 Ill. App. 3d 656, 660, 670 N.E.2d 345, 348 (1996). Therefore, contrary to the language of the circuit court's January 4, 2000, order, it was the finality of the October 7, 1999, order that permitted it to be appealed pursuant to Rule 304(a). Our circuit courts are well advised not to grant a Rule 304(a) finding prior to the determination of the finality of the order to be appealed.

## ANALYSIS

### Standard or Review

■ This court reviews the granting of a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992).

### Discussion

■ Pursuant to the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2), Congress has the authority to preempt state law. *Sprietsma v. Mercury Marine*, 312 Ill. App. 3d 1040, 1044, 729 N.E.2d 45, 48 (2000), *aff'd*, 197 Ill. 2d 112, 757 N.E.2d 75 (2001), *rev'd & remanded on other grounds*, 537 U.S. 51, 154 L. Ed. 2d 466, 123 S. Ct. 518 (2002).[3] In determining whether Congress has preempted state law, our task is to discern congressional intent. *Sprietsma*, 312 Ill. App. 3d at 1044, 729 N.E.2d at 48. A court interpreting a federal statute pertaining to a subject traditionally governed by state law (such as safety) will be reluctant to find preemption. *Sprietsma*, 312 Ill. App. 3d at 1044, 729 N.E.2d at 48. Preemption will be found only in those situations where it is " ' "the clear and manifest purpose of Congress." ' [Citations.]" *Sprietsma*, 312 Ill. App. 3d at 1044, 729 N.E.2d at 48.

Federal preemption of state law can occur in three circumstances: (1) express preemption, where Congress explicitly preempts state law; (2) implied preemption, where Congress has occupied the entire field (field preemption); and (3) implied preemption, where there has been an actual conflict between federal and state law (conflict preemption). *Sprietsma*, 312 Ill. App. 3d at 1044, 729 N.E.2d at 48.

■ It is a well-settled proposition in Illinois that decisions of the federal court interpreting a federal act are controlling upon our state courts, " 'in order that the act be given uniform application.' " *Spriets-*

---

[3]The implications of the United State Supreme Court's decision in *Sprietsma* will be addressed later in this opinion.

*ma,* 312 Ill. App. 3d at 1045, 729 N.E.2d at 48, quoting *Busch v. Graphic Color Corp.,* 169 Ill. 2d 325, 335, 662 N.E.2d 397, 403 (1996).[4]

■ The National Traffic and Motor Vehicle Safety Act (the Safety Act) was enacted by Congress with the express purpose in mind of trying to " 'reduce traffic accidents and deaths and injuries resulting from traffic accidents.' [Citation.]" *Gracia v. Volvo Europa Truck, N.V.,* 112 F.3d 291, 295 (7th Cir. 1997).[5] In order to accomplish this objective, the Safety Act delegates to the Secretary of Transportation the authority to establish " 'federal motor vehicle safety standards' ('FMVSS' or 'safety standards') that 'shall be practicable, meet the need for motor vehicle safety, and be stated in objective terms.' [Citation.]" *Gracia,* 112 F.3d at 295. The Secretary has delegated this duty to the National Highway Transportation Safety Administration (NHTSA). *Garcia,* 112 F.2d at 295.

The safety standard relevant to this appeal is FMVSS 206, which "specifies requirements for door locks and door retention components including latches, hinges, and other supporting means, to minimize the likelihood of occupants being thrown from the vehicle as a result of impact." 49 C.F.R. § 571.206.1 (2000). FMVSS 206 is applicable to passenger cars, multipurpose passenger vehicles and trucks. 49 C.F.R. § 571.206.2 (2000).[6] Section 4 of FMVSS 206 provided in pertinent part as follows:

> "Components on folding doors, roll-up doors, doors that are designed to be easily attached to or detached from motor vehicles manufactured for operation without doors, and doors that are equipped with the wheelchair lifts and that are linked to an alarm system consisting of either a flashing visible signal located in the driver's compartment or an alarm audible to the driver that is activated when the door is open, need not conform to this standard." 49 C.F.R. § 571.206.4(c) (2000).

---

[4]However, our supreme court has held that it is not bound by the Seventh Circuit's interpretation of a federal statute where the United States Supreme Court has not ruled on the question presented, there is a split of authority among the federal circuit courts of appeal, and the court believes that the case from the Seventh Circuit was wrongly decided. See *Weiland v. Telectronics Pacing Systems, Inc.,* 188 Ill. 2d 415, 423, 721 N.E.2d 1149, 1154 (1999).

[5]"The Safety Act was previously codified at 15 U.S.C. § 1381 *et seq.,* but in 1994 was recodified without substantive change at 49 U.S.C. § 30101 *et seq.*" *Gracia,* 112 F.3d at 295 n.2. The accident in this case occurred in 1993 and as the parties have cited the pre-1994 statute, we will do so as well.

[6]We will refer to the 2000 version of FMVSS 206 rather than the 1995 version referred to by the parties since any subsequent changes to the FMVSS do not affect our decision in this case.

The parties' positions in this case may be succinctly summarized as follows: the defendant maintains that FMVSS 206 regulates the components of doors and preempts this entire area of regulation while the plaintiff maintains that the FMVSS 206 is limited to latch components and that the defects alleged in her complaint are outside the scope of the standard.

Central to our determination of the issue raised in this case are the preemption provision and the savings clause contained in the Safety Act.

Section 1392(d) of the Safety Act provides as follows:

"Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. Nothing in this section shall be construed as preventing any State from enforcing any safety standard which is identical to a Federal safety standard." 15 U.S.C. § 1392(d) (1988).

Section 1397(k) provides as follows:

"Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." 15 U.S.C. § 1397(k) (1988).

■ The meaning of federal regulations is a question of law, to be resolved by the court. *Bammerlin v. Navistar International Transportation Corp.*, 30 F.3d 898, 900 (7th Cir. 1994).

The plaintiff's allegations of negligence with regard to the truck's passenger-side door revolved around the fact that the door handle was exposed, *i.e.*, not recessed, and that the door itself was "flimsy."[7] As a result, as the plaintiff alleged in her amended complaint, when Mr. Mejia's seat belt released, the condition of the door and the exposed door handle allowed him to be partially ejected from the truck and killed.

As noted above, the purpose of the Safety Act is to reduce injuries and deaths resulting from traffic accidents. FMVSS 206 furthers this purpose by providing requirements designed to insure that vehicle occupants are not thrown from a vehicle as the result of an impact.

In its statement of purpose and scope, FMVSS 206 does not specifically refer to door handles or to door strength. It references only "door locks" and "door retention components" rather than merely

---

[7] In her amended complaint, the plaintiff used the term "latch handle." On appeal, she uses the term "door handle."

door components. 49 C.F.R. § 571.206.1 (2000). The "door retention components" include "latches, hinges, and other supporting means." 49 C.F.R. § 571.206.1 (2000).

As to the "door handle" allegation, we note that FMVSS 206 provides in pertinent part as follows:

"S4.1.3 *Door Locks.* Each door shall be equipped with a locking mechanism with an operating means in the interior of the vehicle.

S4.1.3.1 *Side Front Door Locks.* When the locking mechanism is engaged, the outside door handle or other outside latch release control shall be inoperative.

S4.1.3.2 *Side Rear Door Locks.* In passenger cars and multipurpose passenger vehicles, when the locking mechanism is engaged both the outside and inside door handles or other latch release controls shall be inoperative." 49 C.F.R. § 571.206.4.1.3 through § 571.206.4.3.2 (2000).

In order for the Safety Act's preemption clause to apply, the federal standard must regulate "the same aspect of performance" regulated by a state standard. *Freightliner Corp. v. Myrick,* 514 U.S. 280, 286, 131 L. Ed. 2d 385, 391, 115 S. Ct. 1483, 1487 (1995).

As set forth in the purpose and scope of FMVSS 206, the "aspect of performance" regulated by the federal standard is the capacity of a vehicle door to retain passengers inside a truck or car. 49 C.F.R. § 571.206.1 (2000). FMVSS 206 does not specifically refer to the strength of the door itself and refers to door handles only in reference to the strength requirements that the door latch and striker assembly of hinged doors must meet in order to provide support for the door and to insure that the door hinge system does not separate. See 49 C.F.R. § 571.206.4.1 through § 571.206.4.5. (2000).

Nonetheless, it is clear that the purpose of FMVSS 206 is to "retain" the occupants of a vehicle by insuring that the door does not give way, either by being torn off of its hinges or having the locking system fail. In this case, the plaintiff alleged that as a result of the way in which the passenger door was constructed, it either gave way itself or caused the door latch to give way, which then opened the door. The plaintiff's allegations still boil down to the passenger-side door's retaining capabilities, whether expressed in terms of the strength of the door itself or that of the door latch. Therefore, FMVSS 206 covers the same aspect of performance as the one alleged in the plaintiff's amended complaint.

However, the preemption provision of the Safety Act refers to state safety standards. The plaintiff's complaint does not cite to or rely on any state safety standard.

In *Geier v. American Honda Motor Co.,* 529 U.S. 861, 146 L. Ed. 2d

914, 120 S. Ct. 1913 (2000), the United States Supreme Court, in interpreting the Safety Act's preemption and safety clauses, held that common law actions were excluded from the preemption provision of the Safety Act. *Geier*, 529 U.S. at 868, 146 L. Ed. 2d at 923, 120 S. Ct. at 1918. The court further held that the savings provision preserved "those actions that seek to establish greater safety than the minimum safety achieved by a federal regulation intended to provide a floor." *Geier*, 529 U.S. at 870, 146 L. Ed. 2d at 924, 120 S. Ct. at 1919.

We must therefore determine if the plaintiff's common law tort action is preempted because of conflicts with FMVSS 206. See *Geier*, 529 U.S. at 874, 149 L. Ed. 2d at 927, 120 S. Ct. at 1922.

As noted above, FMVSS specifically exempts trucks with passenger-side folding doors, such as the one driven by Mr. Mejia, from complying with its requirements.

Initially, vehicles that had detachable doors and that were manufactured for use without doors were exempted from the requirements of FMVSS 206. The exemption was made because "such doors are provided not for the purpose of retaining the driver and the passengers in case of collision but only as protection from inclement weather." 34 Fed. Reg. 13369 (August 19, 1969). Recognizing that the strength requirements were equally inapplicable to components of folding and roll-up doors, FMVSS 206 was amended to provide that "Components on folding doors, roll-up doors, and doors that are designed to be easily attached to or removed from motor vehicles manufactured for operation without doors need not conform to this standard." 34 Fed. Reg. 13369; see 49 C.F.R. § 571.206.4 (2000).

▇ The exemption for such trucks as the one driven by Mr. Mejia is based on the premise that such doors are not designed or intended to prevent their occupants from being ejected from them. The plaintiff's argument that the door in this case failed to feature a recessed handle and that the door should have been constructed more sturdily ignores FMVSS 206's recognition that such doors do not have to be so constructed since their purpose is not to keep the occupants inside the vehicle. Therefore, the plaintiff's modification conflicts with FMVSS 206 in that it seeks to impose a standard for accomplishing a purpose in direct contradiction to the purpose to be accomplished by permitting the exemption from FMVSS 206's requirements.

The Supreme Court's recent decision in *Sprietsma* does not require a different result.[8] In that case, the Supreme Court held that the Coast Guard's decision not to regulate propeller guards did not

---

[8]In *Sprietsma*, the Supreme Court still recognized that if a state common law claim directly conflicted with a federal regulation promulgated under the

preempt the plaintiff's common law action, *inter alia*, because "it does not convey an 'authoritative' message of a federal policy against propeller guards." *Sprietsma*, 537 U.S. at 67, 154 L. Ed. 2d at 480, 123 S. Ct. at 528. In contrast, in the present case, FMVSS 206 conveys an "authoritative" message of a federal policy against requiring the type of door involved in the accident in this case to conform to FMVSS 206's requirements. This is not, as the dissent in this case suggests, "a declination of regulation." 336 Ill. App. 3d at 711.

    *Brennan v. Wisconsin Central Ltd.*, 227 Ill. App. 3d 1070, 591 N.E.2d 494 (1992), relied on by the plaintiff, is distinguishable. In *Brennan*, the trial court had held that the plaintiff's common law claim that the defendant was negligent for failing to install additional warning devices at a railroad crossing was preempted by the Federal Railroad Safety Act (FRSA) (45 U.S.C. § 421 *et seq.* (1988)). On review, the court noted that the Secretary of Transportation had adopted the Manual on Uniform Traffic Control Devices for Streets and Highways (MUTCD), which recognized that there was no single standard system of traffic control devices universally applicable for grade crossings. In determining that the plaintiff's common law claim was not preempted, the court stated as follows:

> "Section 434 of the FRSA allows the States to 'adopt or continue in force an additional or more stringent law *** relating to railroad safety' when necessary to eliminating a safety hazard as long as it is not incompatible with Federal law. [Citation.] This language exhibits that the Federal government did not intend to preempt the field of railroad safety by adopting a manual which is completely devoid of relevant regulations. Furthermore, preempting the field of railroad safety by adopting the MUTCD, which delegates all responsibility for determining the adequacy of warning devices to the applicable State agency, would lead to the absurd result that a statute designed to promote railroad safety would effectively immunize a railroad from liability with respect to safe crossings in the absence of affirmative action by the State." *Brennan*, 227 Ill. App. 3d at 1079, 591 N.E.2d at 501.

    Unlike *Brennan*, there is no provision or suggestion of state participation in determining the adequacy of the door locks and door retention components in the present case.

    We conclude, therefore, that the plaintiff's common law tort action

---

Act under consideration in that case or if it were impossible to comply with any such regulation without incurring liability under state common law, preemption would occur. *Sprietsma*, 537 U.S. at 65, 154 L. Ed. 2d at 479, 123 S. Ct. at 527.

in this case is implicitly preempted on the basis that it conflicts with the provisions of FMVSS 206.

The judgment of the circuit court is affirmed.

SOUTH, P.J., concurs.

JUSTICE WOLFSON, dissenting:

I do not see the conflict. The majority accurately observes that the truck involved in this case did not have to conform to FMVSS 206, since its folding doors are not designed or intended to prevent its occupants from being ejected. I think that is a federal walkoff that leaves the field to state common law actions such as this one.

I do not read the federal regulations as saying "do not enter." Instead, I read them as a declination of regulation, not a preemption that would bar common law claims. *Geier v. American Honda Motor Co.*, 529 U.S. 861, 146 L. Ed. 2d 914, 120 S. Ct. 1913 (2000).

I respectfully dissent.