**Robert Leroy ARD, Appellant,**

v.

**James Donald JENSEN, Defendant,**

and

**The Brunswick Corporation, and Glastron, Inc., Respondents.**

No. WD 56041.

Missouri Court of Appeals, Western District.

May 4, 1999.

As Modified June 24, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1999.

Application for Transfer Denied Aug. 24, 1999.

Alan Kimbrell, St. Louis, for Appellant.

Peter Daniel, James Seigfriend, Jr., Kansas City, for Respondent.

SPINDEN, Presiding Judge.

Robert Leroy Ard appeals the circuit court's granting summary judgment in favor of The Brunswick Corporation and Glastron, Inc., on the ground that federal law preempted Ard's lawsuit regarding propeller guards. Ard suffered injuries on May 29, 1988, when a motorboat, driven by James Donald Jensen,[1] backed over him while he was in the water preparing to ski. Ard sued Brunswick and Glastron, alleging that a Brunswick motor and a Glastron boat were defectively designed and unreasonably dangerous because Brunswick and Glastron did not install a propeller guard on the boat's motor.[2] The circuit court concluded that the Federal Boat Safety Act (FBSA) preempted Ard's claim. We

1. In a trial of Ard's claim against Jensen, a jury assessed Ard's damages at $5 million but found that Ard was 80 percent at fault. The circuit court entered judgment of $1 million for Ard. Neither Jensen nor Ard appeal this judgment.

2. Ard also claimed that the "boat and its throttle/gear shift, linkage, cable and associat-

reverse the circuit court's judgment and remand for further proceedings.

■ Brunswick's and Glastron's motion for summary judgment alleged that Ard's claim was preempted by federal law and, therefore, violated the supremacy clause in Article VI of the United States Constitution.[3] Ard argues, however, that Congress did not intend to preempt, expressly or impliedly, his claim against Brunswick and Glastron under the FBSA. We agree.

In 1971, Congress enacted the FBSA to "improve boating safety by requiring manufacturers to provide safer boats and boating equipment to the public through compliance with safety standards to be promulgated by the Secretary of the Department in which the Coast Guard is operating—presently the Secretary of Transportation." S. REP. No. 92–248, 92nd Cong., 1st Sess. (1971), *reprinted in* 1971 U.S.C.C.A.N. 1333. Pursuant to 46 U.S.C. § 4302, Congress authorized the Secretary of Transportation to promulgate regulations establishing minimum safety standards for recreational boats. Congress also authorized the Secretary of Transportation to delegate to a person, agency or organization "any work, business, or function related to the testing, inspection, and examination necessary for compliance enforcement and for the development of data to enable the Secretary to prescribe regulations under section 4302[.]" 46 U.S.C § 4303. The Secretary acted on that authority and delegated to the Coast Guard's commandant the duty of "[c]arry[ing] out the functions vested in the Secretary by the ... Federal Boat Safety Act of 1971[.]" 49 C.F.R. § 1.46(n)(1).

In 1988, the Coast Guard directed the National Boating Safety Advisory Council to consider whether the Coast Guard should implement federal requirements mandating the use of propeller guards. After hearings and research, the council recommended that "[t]he U.S. Coast Guard should take no regulatory action to require propeller guards." National Boating Safety Advisory Council, Report of the Propeller Guard Subcommittee 24 (1989). The Coast Guard, through a letter written by Rear Admiral Robert T. Nelson, chief of the Office of Navigation, Safety and Waterway Services, to A. Newell Garden, chairman of the National Boating Safety Advisory Council, adopted the council's recommendations concerning propeller guards. The letter said:

> The regulatory process is very structured and stringent regarding justification. Available propeller guard accident data do not support imposition of a regulation requiring propeller guards on motorboats. Regulatory action is also limited by the many questions about whether a universally acceptable propeller guard is available or technically feasible in all modes of boat operation. Additionally, the question of retrofitting millions of boats would certainly be a major economic consideration. The Coast Guard will continue to collect and analyze data for changes and trends....
>
> The Coast Guard will also review and retain any information made available regarding development and testing of new propeller guard devices or other information on the state of the art.

Brunswick and Glastron contend that Nelson's letter triggered federal preemption of the issue of propeller guards.

The FBSA has two provisions which pertain to preemption: 46 U.S.C. §§ 4306 and 4311(g). Section 4306 says:

---

ed machinery and equipment for shifting, accelerating, and decelerating the motor were defectively designed and unreasonably dangerous[.]" The circuit court entered summary judgment on this claim in response to Brunswick's and Glastron's motion in which they contended that Ard had altered the throttle and shift mechanism after the accident and that Ard could not prove that the throttle and shift mechanism was defective and unreasonably dangerous when sold. Ard did not appeal this issue.

3. The supremacy clause says, "This Constitution and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Unless permitted by the Secretary under section 4305 of this title, a State or political subdivision of a State may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment performance or other safety standard or imposing a requirement for associated equipment (except insofar as the State or political subdivision may, in the absence of the Secretary's disapproval, regulate the carrying or use of marine safety articles to meet uniquely hazardous conditions or circumstances within the State) that is not identical to a regulation prescribed under section 4302 of this title.

Section 4311 (g) says, "Compliance with this chapter or standards, regulations, or orders prescribed under this chapter does not relieve a person from liability at common law or under State law."

The issue in this case is whether Congress intended to preempt Ard's common law claim.[4] We conclude that it did not.

■ The supremacy clause accords Congress the power to preempt state law so long as Congress is legislating according to power enumerated to it by Article I. When analyzing the supremacy clause, however, courts should begin " 'with the assumption that the historic police powers of the States [are] *not* to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress.' " *Cipollone v. Liggett Group, Inc.*, 505 U.S.

504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (quoting *Rice v. Santa Fe Elevator Corporation*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)) (emphasis added). Thus, in considering areas which states have traditionally governed through their police powers, we certainly presume that a narrow interpretation of a preemption clause is the proper one. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). The overarching principle, of course, is that " ' "[t]he purpose of Congress is the ultimate touchstone" ' " in every preemption case. *Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608 (citations omitted).

■ Congress' intention is either " 'explicitly stated in the statute's language or implicitly contained in its structure and purpose.' " *Id.* (quoting *Jones v. Rath Packing Company*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977)). Implied preemption arises if Congress expresses an intention to regulate a field of conduct exclusively or if a state law conflicts with a federal law. *Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608. If, however, Congress has considered the preemption issue and has included an express preemption clause in the federal statute and that clause "provides a 'reliable indicium of congressional intent with respect to state authority,' " " 'there is no need to infer congressional intent to pre-empt state laws from the substantive provisions' of the legislation." *Id.* at 517, 112 S.Ct. 2608 (citations omitted).[5]

---

4. The parties agree that Ard's claim is a common law claim. Section 1.010, RSMo 1994, provides, "The common law of England and all statutes and acts of parliament made prior to the fourth year of the reign of James the First, of a general nature, which are not local to that kingdom and not repugnant to or inconsistent with the Constitution of the United States, the constitution of this state, or the statute laws in force for the time being, are the rule of action and decision in this state, any custom or usage to the contrary notwithstanding, but no act of the general assembly or law of this state shall be held to be invalid, or limited in its scope or effect by the courts of this state, for the reason that it is in derogation of, or in conflict with, the common

law, or with such statutes or acts of parliament; but all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof." The Supreme Court, however, noted in *Yerger v. Smith*, 338 Mo. 140, 89 S.W.2d 66, 74 (1935), that "[t]he common law continually expands with the progress of social development in order to meet the exigencies and usages that arise of necessity from this growth and progress of society."

5. In *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995), the court said that *Cipollone* did not hold that implied preemption cannot exist

Congress expressed its intention to preempt state laws and regulations governing boat safety by including a preemption clause in the FBSA. FBSA's § 4306 says that "a State may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment ... safety standard or imposing a requirement for associated equipment ... that is not identical to a regulation prescribed under section 4302 of this title." This means that the only laws or regulations which state regulatory bodies may establish concerning boat safety are those which are identical to the regulations prescribed by the Secretary. Congress, however, made an exception. In § 4311(g), it clearly articulated its intent that the FBSA not exempt common law claims. Both of these clauses are preemption clauses in the material sense of the term because both explicitly deal with the subject of what is and is not preempted. *See Loulos v. Dick Smith Ford, Inc.*, 882 S.W.2d 149, 151 (Mo.App.1994).

■ We must decide, therefore, whether § 4311(g) is a reliable indicium of Congress' intention regarding preemption. Aiding our consideration is a presumption that what Congress intended to accomplish

is articulated in the ordinary meaning of its statutes' language. *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164, 105 S.Ct. 638, 83 L.Ed.2d 556 (1985).

Congress could not have been any more clear in § 4311(g) that it did not want the FBSA to be a shield from common law liability. The statute says this explicitly, and the legislative history emphasizes it:

> This section is a Committee amendment and is intended to clarify that compliance with the Act or standards, regulations, or orders promulgated thereunder, does not relieve any person from liability at common law or under State law. The purpose of the section is to assure that in a product liability suit mere compliance by a manufacturer with the minimum standards promulgated under the Act will not be a complete defense to liability.

S. Rep. No. 92–248, 92nd Cong., 1st Sess. (1971), *reprinted in* 1971 U.S.Code Cong. & Admin.News pp. 1333, 1352.

We conclude that Congress wanted to spare boat manufacturers from state laws which differed from the regulations which the Secretary of Transportation imposed.[6] Congress, however, aware of the common

---

when Congress has chosen to include an express preemption clause in a statute. The *Myrick* court said, "In *Cipollone* we did hold that the pre-emptive scope of the two statutes at issue was governed by the language in each Act. That conclusion rested on a familiar canon of statutory construction and on the absence of any reason to infer any broader preemption.... The fact that an express definition of the pre-emptive reach of a statute 'implies'—*i.e.* supports a reasonable inference—that Congress did not intend to preempt other matters does not mean that the express clause entirely forecloses any possibility of implied pre-emption. Indeed, just two paragraphs after the quoted passage in *Cipollone*, we engaged in a conflict pre-emption analysis of the Federal Cigarette Labeling and Advertising Act ... and found 'no general, inherent conflict between federal pre-emption of state warning requirements and the continued vitality of state common-law damages actions.' 505 U.S., at 518[, 112 S.Ct. 2608].... Our subsequent decisions have not read *Cipollone* to obviate the need for

analysis of an individual statute's pre-emptive effects.... At best, *Cipollone* supports an inference that an express pre-emption clause forecloses implied pre-emption; it does not establish a rule." *Myrick*, 514 U.S. at 287–89, 115 S.Ct. 1483.

**6.** We recognize that the FBSA's savings clause also states that compliance with the FBSA "does not relieve a person from liability ... under State law" and that a problem arises in determining what state law is preempted by § 4306's preemption clause and what state law is saved by the savings clause. Whether this is a contradiction, as it appears to be, is not an issue that we must address. We save that issue for a later case. Congress, however, specifically articulated its intent that the FBSA not exempt common law claims. It used the term "common law" only in the savings clause, and, as we noted, the general principle that "state law" usually includes the common law obviously does not apply here given Congress' clear expression that it does not.

law as it existed when it enacted the FBSA and the duties it imposed on boat manufacturers, did not want the FBSA to obviate those duties. Sparing boat manufacturers from being "stretched" in opposite directions by state and federal regulators seemed proper to Congress, but it seemed improper to allow manufacturers to build boats which a jury would find to be so likely to cause injury to its users that its manufacturer should have foreseen the likelihood of its boat's causing injury and should not have put the boat in the stream of commerce.

Brunswick and Glastron argue that we should not interpret § 4311(g) as preserving Ard's claim because such an interpretation would eviscerate the FBSA's preemption clause. Not so. Congress intended to prohibit state regulatory agencies from establishing or enforcing laws or regulations requiring propeller guards unless the federal government had an identical regulation. That much is quite clear. Congress, however, explicitly stated that it did not want the FBSA to shield manufacturers from state common law claims. Congress obviously wanted the common law to be the base line for imposing duties on manufacturers. It did not want to permit manufacturers to escape accountability for manufacturing boats which breached the duties imposed by common law, but it used the FBSA to authorize the Secretary of

Transportation to require *more* of the manufacturers than the common law required. This does not eviscerate the FBSA's preemption clause. Indeed, adopting Brunswick's and Glastron's interpretation would eviscerate Congress' intent that the common law be the minimum standard to be built upon by the Secretary's regulations.

■ We understand, of course, that the common law has been interpreted as subsumed within the terms "state laws and regulations." *Cipollone*, 505 U.S. at 521–22, 112 S.Ct. 2608 (Stevens, J., plurality opinion).[7] In this instance, however, Congress specifically said in § 4311(g) that it was making an exception for common law claims. "We must give effect to this plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Moreover, "the presumption against pre-emption might give good reason to construe the phrase 'state law' in a pre-emption provision more narrowly than an identical phrase in another context[.]" *Cipollone*, 505 U.S. at 522, 112 S.Ct. 2608 (Stevens, J., plurality opinion).

Brunswick and Glastron contend that "general savings clauses should not be construed in an indiscriminate fashion so as to allow common law actions to subvert a federal regulatory scheme."[8] In support, they rely on *Texas and Pacific Railway*

---

7. " '[State] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.' " *Cipollone*, 505 U.S. at 521, 112 S.Ct. 2608 (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)). In *Medtronic*, 518 U.S. at 504, 116 S.Ct. at 2259–60, Justice Breyer said in his concurring opinion, "The effects of the state agency regulation and the state tort suit are identical. To distinguish between them for pre-emption purposes would grant greater power (to set state standards 'different from, or in addition to' federal standards) to a single state jury than to state officials acting through state administrative or legislative lawmaking processes. Where Congress likely

did not focus specifically upon the matter, ... I would not take it to have intended this anomalous result." In our case, however, Congress did focus specifically on the matter as evidenced by the savings clause.

8. In *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the Supreme Court held that "[a] general remedies savings clause cannot be allowed to supersede [a] specific substantive pre-emption provision[.]" The savings clause at issue in *Morales* was part of the Federal Aviation Act of 1958 and predated the preemption provision at issue which was part of the Airline Deregulation Act of 1978. The Court followed the rule of statutory construction that a specific statute governs a general one. The reasoning in *Morales* does not apply

*Company v. Abilene Cotton Oil Company,* 204 U.S. 426, 446, 27 S.Ct. 350, 51 L.Ed. 553 (1907), in which the United States Supreme Court held that a general savings clause could not be read to save common law rights, "the continued existence of which would be absolutely inconsistent with the provisions of the act." First, Brunswick and Glastron seemingly overlook the adverb "absolutely." Second, for the reasons mentioned earlier, Congress' allowing common law claims is not inconsistent with the FBSA's preemption clause.

Although one of Congress' purposes was to provide uniformity [9] of boat and equipment safety standards in interstate commerce, S. Rep. No. 92–248, 92nd Cong., 1st Sess. (1971), *reprinted in* 1971 U.S.Code Cong. & Admin.News, pp. 1333, 1341, it made clear its intent not to provide manufacturers with a complete defense to product liability suits by allowing a manufacturer to show compliance with the FBSA. The effect of allowing a common law action on an issue such as whether a boat motor is defectively designed and unreasonably dangerous due to the lack of a propeller guard does not result in a state requirement which would undermine Congress' goal of national uniformity. Congress wanted to control whether installation of propeller guards should be mandatory; it did not want to control whether a manufac-

turer could be held liable for a defective design or unreasonable danger because of a lack of propeller guard. It specifically announced that it wanted to allow such claims. Allowing Brunswick and Glastron to use the Coast Guard's decision not to require propeller guards to shield them from tort liability would, in essence, be the same as allowing them to assert as a defense that it complied with the minimum standards of the FBSA, expressly forbidden by Congress.

Brunswick and Glastron respond that we should interpret § 4311(g) as preventing a manufacturer from using compliance with the minimum safety standard as a defense against liability for defectively designed products that are *actually installed. See Mowery v. Mercury Marine, Division of Brunswick Corporation,* 773 F.Supp. 1012, 1017 (N.D.Ohio 1991). We find no such distinction in the words used by Congress. Congress chose broad language. Had Congress wanted to limit the type of common law claims to be allowed, it could have done so. We presume that Congress intended what the ordinary meaning of its statutes' language conveys. *Mills Music,* 469 U.S. at 164, 105 S.Ct. 638.

■ Brunswick and Glastron rely heavily on numerous federal and state cases holding that the FBSA preempts common law defective design claims based on the absence of a propeller guard.[10] Our con-

---

to our case because the savings clause at issue in our case is a part of the FBSA and is not a "general remedies savings clause."

**9.** Uniformity, however, was not Congress' chief goal, as manifested in § 4306 which gave the Secretary of Transportation the authority to permit a state "to establish, continue in effect or enforce a law or regulation" regarding boat and equipment safety standards if the Secretary finds that the recreational vessel should be exempt under § 4305. Section 4305 says, "If the Secretary considers that recreational vessel safety will not be adversely affected, the Secretary may issue an exemption from this chapter or a regulation prescribed under this chapter." The legislative history acknowledges, "A right of disapproval ... is reserved to the Secretary to insure that indiscriminate use of state authority does not seriously impinge on the basic need for uniformity." S. Rep. No. 92–248,

92nd Cong., 1st Sess. (1971), *reprinted in* 1971 U.S.Code Cong. & Admin.News, pp. 1333, 1341. Hence, complete uniformity could not have been Congress' intent.

**10.** *See Carstensen v. Brunswick Corp.,* 49 F.3d 430 (8th Cir.), *cert. denied,* 516 U.S. 866, 116 S.Ct. 182, 133 L.Ed.2d 120 (1995); *Lewis v. Brunswick Corp.,* 922 F.Supp. 613 (S.D.Ga. 1996), *aff'd,* 107 F.3d 1494 (11th Cir.1997); *Moss v. Outboard Marine Corp.,* 915 F.Supp. 183 (E.D.Cal.1996); *Davis v. Brunswick Corp.,* 854 F.Supp. 1574 (N.D.Ga.1994); *Shield v. Bayliner Marine Corp.,* 822 F.Supp. 81 (D.Conn.1993); *Shields v. Outboard Marine Corp.,* 776 F.Supp. 1579 (M.D.Ga.1991); *Mowery v. Mercury Marine, Div. of Brunswick Corp.,* 773 F.Supp. 1012 (N.D.Ohio 1991); *Ryan v. Brunswick Corp.,* 454 Mich. 20, 557 N.W.2d 541 (1997); *Farner v. Brunswick Corp.,* 239 Ill.App.3d 885, 180 Ill.Dec. 493,

clusion, however, is consistent with the overriding presumption when dealing with preemption cases: The presumption is against preemption—preemption is the exception rather than the rule. "Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). We, therefore, conclude that, pursuant to § 4311(g), Congress expressed its intent that common law claims not be preempted. Because § 4311(g) provides a reliable indicium of congressional intent with respect to state authority, we need not engage in implied preemption analysis in this instance.[11] We, therefore, reverse the circuit court's entry of summary judgment and remand for further proceedings on Ard's claim concerning Brunswick's and Glastron's failure to install a propeller guard on Jensen's boat.

EDWIN H. SMITH, Judge, and ALBERT A. RIEDERER, Judge, concur.

---

607 N.E.2d 562 (1992). Brunswick and Glastron also cite unpublished opinions: *Silveroli v. Bayliner Marine Corp.*, No. CV 745828, slip op. (Cal.Super. Ct. Santa Clara Cty. Feb. 26, 1996); *Greenwood v. Brunswick Corp.*, No. CV–90–973, slip op. (Maine Super. Ct. Cumberland Cty. Apr. 22, 1994); *Denison v. Brunswick Corp.*, No. 91–041618–CZ, slip op. (Mich. Cir. Ct. Washtenaw Cty. July 17, 1992), *aff'd*, No. 15869 (Mich.Ct.App.1995); *Parker v. Outboard Marine Corp.*, No. J90–0011(L), slip op. (S.D. Miss. Feb 28, 1991).

11. Although *Myrick*, 514 U.S. at 289, 115 S.Ct. 1483, held that "[a]t best, *Cipollone* supports an inference that an express pre-emption clause forecloses implied pre-emption, it does not establish a rule," in this case, Congress' intent is clear. Hence, the *Cipollone* inference is applicable.