(No. 89492.—

REX R. SPRIETSMA, Adm'r of the Estate of Jeanne Sprietsma, Deceased, Appellant, v. MERCURY MARINE, a Division of Brunswick Corporation, Appellee.

*Opinion filed August 16, 2001.*

THOMAS, J., took no part.
HARRISON, C.J., dissenting.

Power, Rogers & Smith, P.C. (Joseph A. Power, Jr., Todd A. Smith and Devon C. Bruce, of counsel), and John B. Kralovec, of Kralovec, Jambois & Schwartz, all of Chicago, Arthur H. Bryant, of Oakland, California, and Anne Bloom and Michael Quirk, of Washington, D.C., for appellant.

Cassiday, Shade & Gloor (Donald F. Ivansek and Michael J. Cucco, of counsel), and Stephen M. Shapiro, John

J. Sullivan, Steffen N. Johnson and Kermit Roosevelt, of Mayer, Brown & Platt, all of Chicago, and Faegre & Benson, LLP, of Minneapolis, Minnesota (Daniel J. Connolly and Mark J. Carpenter, of counsel), for appellee.

Hugh C. Griffin and Stevie A. Starnes, of Lord, Bissell & Brook, of Chicago (Hugh F. Young, Jr., of Reston, Virginia, of counsel), for *amicus curiae* Product Liability Advisory Council, Inc.

JUSTICE GARMAN delivered the opinion of the court:

The issue in this case is whether the Federal Boat Safety Act of 1971 (FBSA) (46 U.S.C. § 4301 *et seq.* (1994)) preempts state common law causes of action based on the manufacturer's failure to install propeller guards on boat engines. In July 1995, while boating in Tennessee, plaintiff's decedent, Jeanne Sprietsma, fell from a motorboat and was struck by the motor's propeller blades. As a result, she suffered serious injuries that resulted in her death. The boat was equipped with a 115-horsepower outboard motor, which did not contain a propeller guard. The motor was designed, manufactured, and sold by Mercury Marine.

The decedent's husband, Rex Sprietsma, filed a wrongful-death action against, among others, Mercury Marine, seeking to recover damages for decedent's pain and suffering along with the pecuniary loss suffered by himself and his son. Mercury Marine filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1998)) on the grounds that Sprietsma's claims were expressly preempted by the language of the FBSA's preemption clause and were also impliedly preempted. The circuit court of Cook County granted Mercury Marine's motion to dismiss, finding the claims to be impliedly preempted. The appellate court affirmed, holding that the common

law claims for failure to install propeller guards were expressly preempted. 312 Ill. App. 3d 1040. We granted Sprietsma's petition for leave to appeal pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315). As this case is an appeal from a section 2—619 motion to dismiss, our review is *de novo*. *Carver v. Nall*, 186 Ill. 2d 554, 557 (1999).

A. The Federal Boat Safety Act of 1971 and the Coast Guard's Decision Regarding Propeller Guards

Congress enacted the FBSA "to improve boating safety by requiring manufacturers to provide safer boats and boating equipment to the public through compliance with safety standards to be promulgated by the Secretary of the Department in which the Coast Guard is operating—presently the Secretary of Transportation." S. Rep. No. 92—248 (1971), *reprinted in* 1971 U.S.C.C.A.N. 1333. Due to an increase in the number of boat-related accidents and fatalities, Congress enacted the FBSA to establish "a coordinated national boating safety program." S. Rep. No. 92—248 (1971), *reprinted in* 1971 U.S.C.C.A.N. 1331, 1334-35. To implement this goal, the FBSA authorized the Secretary of Transportation (Secretary) to prescribe regulations necessary to establish minimum safety standards for recreational boats. 46 U.S.C. § 4302(a) (1994). The Secretary may delegate regulatory functions to an organization or agency under his supervision (46 U.S.C. § 4303(a) (1994)) and, in fact, has delegated the regulatory authority to the Commandant of the United States Coast Guard (49 C.F.R. § 1.46(n)(1) (1999)). Before issuing a regulation, the Coast Guard must consult with the National Boating Safety Advisory Council (Advisory Council) to consider the need for a regulation and the extent to which the regulations will contribute to recreational boating safety. 46 U.S.C. § 4302(c)(1) through (c)(4) (1994).

In 1988, the Coast Guard considered whether to

require manufacturers to install propeller guards on their boat motors. The Coast Guard directed the Advisory Council to review the available data on prevention of propeller-strike accidents and to assess the feasibility and potential safety advantages and disadvantages of propeller guards. The Advisory Council appointed a Propeller Guard Subcommittee (Subcommittee) to review and analyze the data and to consider whether the Coast Guard should move toward a federal propeller guard requirement. National Boating Safety Advisory Council, Report of the Propeller Guard Subcommittee, November 7, 1989, at Appendix A.

After studying the issue and conducting public hearings, the Subcommittee unanimously recommended that the "Coast Guard should take no regulatory action to require propeller guards." Report of the Propeller Guard Subcommittee, at 24. The Subcommittee made this recommendation after finding that propeller guards could create other safety concerns, including: (1) adversely affecting boat operations at speeds greater than 10 miles per hour; (2) increasing the chance of blunt force contact to a person in the water; and (3) creating a new hazard in that an arm or leg could be caught between the guard and the propeller blades. Report of the Propeller Guard Subcommittee, at 19-21.

The Subcommittee's report was presented to the Advisory Council, which accepted and adopted the recommendations. Minutes of the 44th Meeting of the National Boating Safety Advisory Council 19 (November 6-7, 1989). The report and recommendations were then sent to the Coast Guard, which adopted the Advisory Council's recommendations, including its recommendation that no regulatory action should be taken to require propeller guards because "[a]vailable propeller guard accident data [does] not support imposition of a regulation requiring propeller guards on motorboats." Letter from Robert T.

Nelson, Rear Admiral, U.S. Coast Guard, Chief, Office of Navigation Safety and Waterway Services, to A. Newell Garden, Chairman, National Boating Safety Advisory Council (February 1, 1990).

## B. Federal Preemption

Pursuant to the supremacy clause of article VI of the United States Constitution, the laws of the United States "shall be the supreme Law of the Land *** any thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Thus, state law is without effect if it conflicts with federal law. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 120 L. Ed. 2d 407, 422, 112 S. Ct. 2608, 2617 (1992). Consideration of issues arising under the supremacy clause begins with the assumption that the historic state police powers are not to be superseded by federal law unless that is the clear and manifest purpose of Congress. *Cipollone*, 505 U.S. at 516, 120 L. Ed. 2d at 422, 112 S. Ct. at 2617. Thus, the ultimate question in any preemption analysis is to determine the intent of Congress. *Cipollone*, 505 U.S. at 516, 120 L. Ed. 2d at 422, 112 S. Ct. at 2617.

Federal law can preempt state law under the supremacy clause in three circumstances: (1) where Congress has expressly preempted state action (express preemption); (2) where Congress has implemented a comprehensive regulatory scheme in an area, thus removing the entire field from state realm (implied field preemption); or (3) where state action actually conflicts with federal law (implied conflict preemption). *Cipollone*, 505 U.S. at 516, 120 L. Ed. 2d at 422-23, 112 S. Ct. at 2617; *English v. General Electric Co.*, 496 U.S. 72, 78-79, 110 L. Ed. 2d 65, 74, 110 S. Ct. 2270, 2275 (1990). Our focus in this case will deal with express and implied conflict preemption.

The parties dispute whether our analysis should begin with a presumption that federal law does not

preempt Sprietsma's common law tort claims against Mercury Marine. Sprietsma contends that there is a strong presumption against preemption here because federal preemption would displace state police powers that protect the health and safety of its citizens. Conversely, Mercury Marine argues that this case does not involve the historic police powers of the state but derives from federal maritime jurisdiction.

The United States Supreme Court has stated that "an 'assumption' of nonpre-emption is not triggered when the State regulates in an area where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108, 146 L. Ed. 2d 69, 88, 120 S. Ct. 1135, 1147 (2000). However, an assumption of nonpreemption is triggered when the state regulates health and safety matters which have traditionally come within the jurisdiction of the state through its police powers. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 474, 135 L. Ed. 2d 700, 709, 116 S. Ct. 2240, 2245 (1996). We recognize that Sprietsma's claim that Mercury Marine designed a defective motor by failing to install a propeller guard relates to health and safety concerns. However, the claim also encompasses maritime activity, which is traditionally within the realm of federal regulation. *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 215, 61 L. Ed. 1086, 1098, 37 S. Ct. 524, 528 (1917) ("Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country"); *Lady v. Neal Glaser Marine, Inc.*, 228 F.3d 598, 607 (5th Cir. 2000).

Section 4301(a) states that the FBSA and its regulations apply "to a recreational vessel and associated equipment carried in the vessel on waters subject to the jurisdiction of the United States and, for a vessel owned in the United States, on the high seas." 46 U.S.C. § 4301(a) (1994). Furthermore, the FBSA's "[g]eneral jurisdictional

applicability is to vessels within the historic federal maritime jurisdiction." S. Rep. No. 92—248 (1971), *reprinted in* 1971 U.S.C.C.A.N. 1333, 1338. In deciding whether the claims in this case relate to federal maritime activity, we note that the United States Supreme Court has held that a collision between two pleasure boats on navigable waters had a sufficient nexus to traditional maritime activity to come within the admiralty jurisdiction of the federal courts. *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 674, 73 L. Ed. 2d 300, 306, 102 S. Ct. 2654, 2658 (1982). Thus, Sprietsma's claims bear upon an area historically regulated by the federal government. When "state laws *** bear upon national and international maritime commerce, *** there is no beginning assumption that concurrent regulation by the State is a valid exercise of its police powers." *Locke*, 529 U.S. at 108, 146 L. Ed. 2d at 88-89, 120 S. Ct. at 1148. Although Sprietsma's claims bear upon state and federal concerns, we believe the federal concerns predominate in this case. Therefore, in deciding whether Sprietsma's claims are preempted by the FBSA, we will not apply a presumption against preemption.

In addition, as we address the preemption issue, we will look to the decisions of federal district and circuit courts. Although we have stated in the past that the decisions of federal courts interpreting a federal statute are controlling on Illinois courts (see *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 335 (1996)), this overstates the degree of deference this court must pay to federal decisions. Thus, in *Wilson v. Norfolk & Western Ry. Co.*, 187 Ill. 2d 369, 381 (1999), we elected to follow the precedent of the Seventh Circuit with regard to its interpretation of the Federal Employer's Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (1994)), because we found the Seventh Circuit analysis to be "reasonable and logical." More recently, however, we declined to follow Seventh Circuit precedent

in a case involving a preemption issue under FELA when there was a split of authority among the federal circuits and we believed the Seventh Circuit case was wrongly decided. See *Weiland v. Tectronics Pacing Systems, Inc.*, 188 Ill. 2d 415, 423 (1999).

Nevertheless, as we have repeatedly recognized, uniformity of decision is an important consideration when state courts interpret federal statutes. See *Weiland*, 188 Ill. 2d at 422; *Wilson*, 187 Ill. 2d at 383; *Busch*, 169 Ill. 2d at 335. Uniformity is particularly important where, as here, the federal statute relates to a product that is inherently mobile and thus likely to move from state to state. Indeed, this suit was brought to recover damages in an Illinois court, under Illinois law, for a death that took place in Tennessee. Boats also frequently navigate in lakes or rivers that mark the boundary between two states. Thus, it is essential that a uniform body of law be developed. In the absence of a decision of the United States Supreme Court, which would definitively answer the question presented by this case, we elect to give considerable weight to the decisions of federal courts of appeals and federal district courts that have addressed this issue.

## C. Express Preemption

Keeping in mind the preceding preemption principles, we first address whether the FBSA expressly preempts Sprietsma's common law tort claims against Mercury Marine. Because Congress has demonstrated its intent to preempt some aspects of state law under section 4306 (46 U.S.C. § 4306 (1994)), we must determine the scope of preemption under that provision by focusing on its text. See *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 664, 123 L. Ed. 2d 387, 396, 113 S. Ct. 1732, 1737 (1993) ("If the statute contains an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the

clause, which necessarily contains the best evidence of Congress' pre-emptive intent").

Section 4306 states:

> "Unless permitted by the Secretary under section 4305 of this title, a State or political subdivision of a State may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment performance or other safety standard or imposing a requirement for associated equipment (except insofar as the State or political subdivision may, in the absence of the Secretary's disapproval, regulate the carrying or use of marine safety articles to meet uniquely hazardous conditions or circumstances within the State) that is not identical to a regulation prescribed under section 4302 of this title." 46 U.S.C. § 4306 (1994).

Section 4306 preempts state laws or regulations that are not identical to the regulations promulgated under the FBSA. Although the FBSA does not define "law or regulation," the phrase clearly indicates an intent to include common law claims. *Cipollone*, 505 U.S. at 522, 120 L. Ed. 2d at 426, 112 S. Ct. at 2620 (state law includes common law as well as statutes and regulations); *Lewis v. Brunswick Corp.*, 107 F.3d 1494, 1501 (11th Cir. 1997) (language demonstrates intent to include common law claims); *Farner*, 239 Ill. App. 3d at 891. We also note that both state and federal courts have held that the preemption provision of the FBSA expressly preempts common law tort claims. See, *e.g.*, *Carstensen v. Brunswick Corp.*, 49 F.3d 430, 433 (8th Cir. 1995); *Moss v. Outboard Marine Corp.*, 915 F. Supp. 183, 186 (E.D. Cal. 1996); *Shield v. Bayliner Marine Corp.*, 822 F. Supp. 81, 84 (D. Conn. 1993); *Mowery v. Mercury Marine*, 773 F. Supp. 1012, 1017 (N.D. Ohio 1991); *Farner v. Brunswick Corp.*, 239 Ill. App. 3d 885, 891-92 (1992); *Ryan v. Brunswick Corp.*, 454 Mich. 20, 39, 557 N.W.2d 541, 551 (1997).

However, we must examine section 4306 in conjunction with the FBSA's savings clause provision of section 4311(g) (46 U.S.C. § 4311(g) (1994)), which states:

"[c]ompliance with this chapter or standards, regulations, or orders prescribed under this chapter does not relieve a person from liability at common law or under State law." 46 U.S.C. § 4311(g) (1994). Although section 4306, the preemption provision, evinces Congress' intent to expressly preempt state laws or regulations not identical to those promulgated in the FBSA, this provision prevents us from finding express preemption.

The United States Supreme Court in *Geier v. American Honda Motor Co.*, 529 U.S. 861, 868, 146 L. Ed. 2d 914, 923, 120 S. Ct. 1913, 1918 (2000), stated that the inclusion of a savings clause prohibits a broad reading of the express preemption provision. The Court noted that the presence of a savings clause "assumes that there are some significant number of common-law liability cases to save." *Geier*, 529 U.S. at 868, 146 L. Ed. 2d at 923, 120 S. Ct. at 1918. We agree that section 4311 limits section 4306. Consequently, we find no express preemption. See *Lady*, 228 F.3d at 611 (unable to conclude that section 4306 expressly preempted common law tort action); *Lewis*, 107 F.3d at 1502 (express terms of FBSA fail to show Congress' intent to preempt common law claims).

D. Implied Conflict Preemption

Although we find Sprietsma's action not to be expressly preempted by the FBSA, we are not prohibited from finding implied preemption. *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 352, 148 L. Ed. 2d 854, 863-64, 121 S. Ct. 1012, 1019 (2001) ("[N]either an express pre-emption provision nor a savings clause 'bar[s] the ordinary working of conflict pre-emption principles' "), quoting *Geier*, 529 U.S. at 869, 146 L. Ed. 2d at 924, 120 S. Ct. at 1919; *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288, 131 L. Ed. 2d 385, 393, 115 S. Ct. 1483, 1488 (1995) (the inclusion of an express preemption provision "does not mean that the express clause entirely forecloses any possibility of implied pre-emption").

The United States Supreme Court has found implied conflict preemption where it is "impossible for a private party to comply with both state and federal requirements" (*English*, 496 U.S. at 79, 110 L. Ed. 2d at 74, 110 S. Ct. at 2275), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*Hines v. Davidowitz*, 312 U.S. 52, 67-68, 85 L. Ed. 581, 587, 61 S. Ct. 399, 404 (1941); see also *Freightliner*, 514 U.S. at 287, 131 L. Ed. 2d at 392, 115 S. Ct. at 1487). Since it is not impossible for a manufacturer to comply with a state common law rule requiring propeller guards and the Coast Guard's decision not to require them, we will address whether a state common law tort claim based on failure to install the guards stands as an obstacle to the accomplishment of the purposes and objectives Congress sought to achieve in enacting the FBSA.

Initially, Sprietsma maintains that the Supreme Court's decision in *Freightliner* precludes a finding of implied preemption in this case. In *Freightliner*, the Supreme Court considered whether common law claims based on the failure to install antilock brakes on 18-wheel tractor-trailers were expressly or impliedly preempted by the preemption clause of the Vehicle Safety Act. *Freightliner*, 514 U.S. at 282, 131 L. Ed. 2d at 389, 115 S. Ct. at 1485. The defendant tractor-trailer manufacturers argued that the failure-to-install claims were preempted because the National Highway Traffic Safety Administration (NHTSA) had indicated its intent to regulate braking systems by issuing a regulation on the matter. *Freightliner*, 514 U.S. at 284-86, 131 L. Ed. 2d at 390-91, 115 S. Ct. at 1486-87. That regulation was struck down by the Court of Appeals for the Ninth Circuit, but the defendant manufacturers argued it still had preemptive effect because it showed the NHTSA's intent to forbid state regulation of braking systems. *Freightliner*,

514 U.S. at 286, 131 L. Ed. 2d at 391-92, 115 S. Ct. at 1487.

The Supreme Court rejected the manufacturers' argument, stating that there was no federal standard on stopping distances or vehicle stability for trucks or trailers, and there was "no evidence that NHTSA decided that trucks and trailers should be free from all state regulation of stopping distances and vehicle stability." *Freightliner*, 514 U.S. at 286, 131 L. Ed. 2d at 392, 115 S. Ct. at 1487. The Court stated that "the lack of federal regulation did not result from an affirmative decision of agency officials to refrain from regulating air brakes." *Freightliner*, 514 U.S. at 286, 131 L. Ed. 2d at 392, 115 S. Ct. at 1487. Thus, states could implement safety standards and, without any federal standards, a liability claim would not be in conflict with or frustrate the objectives of Congress. *Freightliner*, 514 U.S. at 289, 131 L. Ed. 2d at 394, 115 S. Ct. at 1488.

In contrast to *Freightliner*, where the lack of federal regulation was not the result of an affirmative decision not to regulate, here, the Coast Guard did make an affirmative decision to refrain from promulgating a propeller guard requirement. See *Lady*, 228 F.3d at 612 ("the lack of a regulation mandating propeller guards on recreational boats came after the Coast Guard studied the matter and affirmatively determined that requiring propeller guards was substantively inappropriate"); *Lewis*, 107 F.3d at 1504 ("[w]hile an absence of regulation under the Vehicle Safety Act does not prevent states from regulating motor vehicle safety standards, an absence of federal regulation under the FBSA means that no regulation, state or federal, is appropriate[;] *Freightliner* is distinguishable for that reason"). As we agree with the federal decisions in *Lady* and *Lewis*, the ruling in *Freightliner* does not preclude a finding of implied preemption in this case.

In *Geier*, the Supreme Court determined whether Federal Motor Vehicle Safety Standard 208 (Safety Standard 208) preempted a common law tort action based on the failure to install a driver's side airbag. The Department of Transportation stated that the purpose of Safety Standard 208 was to provide auto manufacturers with a choice of whether or not to install airbags with a gradual phase-in of passive restraint devices. *Geier*, 529 U.S. at 878-79, 146 L. Ed. 2d at 930, 120 S. Ct. at 1924. Under an implied conflict preemption analysis, the Court stated that Geier's tort action depended upon her claim that auto manufacturers had a duty to install an airbag in her car when it was made. *Geier*, 529 U.S. at 881, 146 L. Ed. 2d at 931-32, 120 S. Ct. at 1925. This alleged duty would have required other auto manufacturers to install airbags in similar cars rather than other safety restraint systems, such as automatic seatbelts or passive interiors. *Geier*, 529 U.S. at 881, 146 L. Ed. 2d at 932, 120 S. Ct. at 1925. This claim "would have presented an obstacle to the variety and mix of devices that the federal regulation sought *** [and] also would have stood as an obstacle to the gradual passive restraint phase-in that the federal regulation deliberately imposed." *Geier*, 529 U.S. at 881, 146 L. Ed. 2d at 932, 120 S. Ct. at 1925. The Court thus concluded that Safety Standard 208 preempted Geier's tort claim because of the obstacle it presented to the accomplishment of federal objectives. *Geier*, 529 U.S. at 881, 146 L. Ed. 2d at 932, 120 S. Ct. at 1925.

Mercury Marine maintains that we should apply *Geier*'s ruling that Safety Standard 208 preempted conflicting state laws to this case in order to preempt Sprietsma's tort claim. Sprietsma, on the other hand, argues that there is no regulation by the Coast Guard with which his claim could conflict, only a decision not to prescribe a standard. According to Sprietsma, the absence of a regulation does not in itself constitute a regulation.

See *Freightliner*, 514 U.S. at 286, 131 L. Ed. 2d at 392, 115 S. Ct. at 1487. However, the Supreme Court has stated that "a federal decision to forgo regulation in a given area may imply an authoritative federal determination that the area is best left unregulated, and in that event would have as much pre-emptive force as a decision to regulate." (Emphases omitted.) *Arkansas Electric Cooperative Corp. v. Arkansas Public Service Comm'n*, 461 U.S. 375, 384, 76 L. Ed. 2d 1, 10, 103 S. Ct. 1905, 1912 (1983); see also *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 151-52, 103 L. Ed. 2d 118, 135, 109 S. Ct. 971, 978 (1989). The Supreme Court has also concluded that " 'where [the] failure of ... federal officials affirmatively to exercise their full authority takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute,' States are not permitted to use their police power to enact such a regulation." *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 178, 55 L. Ed. 2d 179, 201, 98 S. Ct. 988, 1004-05 (1978), quoting *Bethlehem Steel Co. v. New York State Labor Relations Board*, 330 U.S. 767, 774, 91 L. Ed. 1234, 1246, 67 S. Ct. 1026, 1030 (1947).

In determining whether the Coast Guard's failure to promulgate a propeller guard requirement compels the conclusion that no such regulation is appropriate, we find helpful the Supreme Court's decision in *Ray*. In that case, the Supreme Court considered whether federal law preempted the State of Washington's enactment of a law regulating standard safety features and weight of oil tankers navigating Puget Sound. The Washington "Tanker Law" sought to exclude tankers in excess of 125,000 DWT (dead weight tons) from Puget Sound. *Ray*, 435 U.S. at 173, 55 L. Ed. 2d at 198, 98 S. Ct. at 1002. Shipbuilders alleged these requirements were preempted by section 1222(b) of the federal Ports and Waterways Safety Act (PWSA) which prohibited states from impos-

ing higher safety standards than those prescribed by the Transportation Secretary. The Court stated that enforcement of the state's design requirements "would at least frustrate *** the evident congressional intention to establish a uniform federal regime controlling the design of oil tankers." *Ray*, 435 U.S. at 165, 55 L. Ed. 2d at 193, 98 S. Ct. at 998.

The Court then looked at the PWSA and the state's exclusion of vessels in excess of 125,000 DWT. *Ray*, 435 U.S. at 173, 55 L. Ed. 2d at 198, 98 S. Ct. at 1002. The Court found that section 1222(b) of the PWSA was intended to have a preemptive impact. Further, even without section 1222(b), it would be reluctant to uphold the Tanker Law's absolute ban on tankers in excess of 125,000 DWT. *Ray*, 435 U.S. at 178, 55 L. Ed. 2d at 201, 98 S. Ct. at 1004. The Court based this conclusion on the Coast Guard's vessel traffic control system for the Rosario Strait. *Ray*, 435 U.S. at 178, 55 L. Ed. 2d at 201, 98 S. Ct. at 1004-05. The Transportation Secretary, through the Coast Guard, promulgated the "Puget Sound Vessel Traffic System containing general rules, communication rules, vessel movement reporting requirements, a traffic separation scheme, special rules for ship movement in the Rosario Strait, descriptions and geographic coordinates of the separation zones and traffic lanes, and a specification for precautionary areas and reporting points." *Ray*, 435 U.S. at 170, 55 L. Ed. 2d at 196, 98 S. Ct. at 1001. A local Coast Guard rule prohibited the passage of more than one 70,000 DWT vessel in Rosario Strait in either direction at a given time, and in bad weather, the restriction was reduced to 40,000 DWT. *Ray*, 435 U.S. at 171, 55 L. Ed. 2d at 197, 98 S. Ct. at 1001.

The Court stated the question then was whether the Transportation Secretary, through the Coast Guard, had addressed the size limitation question. *Ray*, 435 U.S. at 174, 55 L. Ed. 2d at 199, 98 S. Ct. at 1003. Because of

the navigation rules pertaining to the Rosario Strait, the Court held that the Secretary's failure to promulgate a ban on the operations of oil tankers in excess of 125,000 DWT took on the character of a ruling that no such regulation is appropriate pursuant to the policy of the PWSA. *Ray*, 435 U.S. at 178, 55 L. Ed. 2d at 201, 98 S. Ct. at 1004-05.

The Supreme Court reaffirmed the framework and holding of *Ray* in *Locke*, 529 U.S. at 103-04, 146 L. Ed. 2d at 85-86, 120 S. Ct. at 1145. There, the Court stated that "*Ray* defined the relevant inquiry for *** pre-emption as whether the Coast Guard has promulgated its own requirement on the subject or has decided that no such requirement should be imposed at all." *Locke*, 529 U.S. at 110, 146 L. Ed. 2d at 89, 120 S. Ct. at 1148.

We believe that the Coast Guard's failure to promulgate a propeller guard requirement here equates to a ruling that no such regulation is appropriate pursuant to the policy of the FBSA. The Coast Guard made an informed decision that no regulatory action should be taken to require propeller guards after studying the findings and recommendations of the Advisory Council and the Propeller Guard Subcommittee. A damage award would, in effect, create a propeller guard requirement, thus frustrating the objectives of Congress in promulgating the FBSA. See *Lady*, 228 F.3d at 614 (damage award "would effectively require boat manufacturers to install propeller guards, in direct contravention to the Coast Guard's policy against mandating such a device in favor of affording manufacturers flexibility in the matter"); *Lewis*, 107 F.3d at 1505 (plaintiffs' "product liability claims seek to impose a propeller guard requirement"). Thus, Sprietsma's claim would present an obstacle to the accomplishment and execution of the purposes and objectives Congress sought in enacting the FBSA.

We stated earlier that in an effort to give uniform ap-

plication to the FBSA, we would give great weight to federal decisions on this matter. In that regard, we note that several federal district courts and courts of appeals have found preemption, express or implied, in similar propeller guard cases. See, *e.g.*, *Lady v. Neal Glaser Marine, Inc.*, 228 F.3d 598 (5th Cir. 2000); *Lewis v. Brunswick Corp.*, 107 F.3d 1494 (11th Cir. 1997); *Carstensen v. Brunswick Corp.*, 49 F.3d 430 (8th Cir. 1995); *Moss v. Outboard Marine Corp.*, 915 F. Supp. 183 (E.D. Cal. 1996); *Davis v. Brunswick Corp.*, 854 F. Supp. 1574 (N.D. Ga. 1993); *Shield v. Bayliner Marine Corp.*, 822 F. Supp. 81 (D. Conn. 1993); *Shields v. Outboard Marine Corp.*, 776 F. Supp. 1579 (M.D. Ga. 1991); *Mowery v. Mercury Marine, Division of Brunswick Corp.*, 773 F. Supp. 1012 (N.D. Ohio 1991).

The Fifth Circuit Court of Appeals in *Lady* dealt with a jet ski operator who was severely injured by the propeller blades of a boat with which he had collided. *Lady*, 228 F.3d at 600. The court of appeals held that the operator's claims, based on the manufacturer's failure to install propeller guards on its boat, were impliedly preempted by the FBSA. *Lady*, 228 F.3d at 615. The Eleventh Circuit Court of Appeals in *Lewis* dealt with a passenger on a boat who was killed after she fell in the water and was struck by the propeller blades. *Lewis*, 107 F.3d at 1497. The court of appeals held that her parents' claims, based on the engine's being defective because it lacked a propeller guard, were impliedly preempted because they conflicted "with the regulatory uniformity purpose of the FBSA." *Lewis*, 107 F.3d at 1506.

On appeal to the United States Supreme Court, the Solicitor General in *Lewis* argued that the Coast Guard's failure to issue a regulation concerning propeller guards was not a basis for implied conflict preemption of com-

mon law tort claims.[1] Sprietsma argues that this court should adhere to the argument presented by the Solicitor General, urging reversal in *Lewis*. In support of this contention, Sprietsma points out that in *Geier*, the Supreme Court placed "some weight upon DOT"s [Department of Transportation's] interpretation of [Safety Standard] 208's objectives and its conclusion, as set forth in the Government's brief." *Geier*, 529 U.S. at 883, 146 L. Ed. 2d at 933, 120 S. Ct. at 1926. The Court concluded that it had "no reason to suspect that the Solicitor General's representation of DOT's views reflects anything other than 'the agency's fair and considered judgment on the matter.' " *Geier*, 529 U.S. at 884, 146 L. Ed. 2d at 933, 120 S. Ct. at 1927, quoting *Auer v. Robbins*, 519 U.S. 452, 462, 137 L. Ed. 2d 79, 91, 117 S. Ct. 905, 912 (1997). We do not believe that Sprietsma's reliance on the United States' position in *Lewis* warrants our deference on the matter.

First, the Solicitor General has not presented his argument concerning the *Lewis* case or the Sprietsma claim to this court. See *Lady*, 228 F.3d at 615 n.23 (absent his appearance, Solicitor General's views on the matter not before the court). Second, the Court in *Geier* stated that it would place "some weight" on the DOT's interpretation. *Geier*, 529 U.S. at 883, 146 L. Ed. 2d at 933, 120 S. Ct. at 1926. Thus, even if we were to consider the Solicitor General's argument in *Lewis*, we do not believe the weight given to it would overcome the application of our implied preemption analysis. See *Lady*, 228 F.3d at 615 n.23. Third, arguments made in the *Lewis* brief have

[1] A petition for *certiorari* was granted in *Lewis v. Brunswick Corp.*, 522 U.S. 978, 139 L. Ed. 2d 337, 118 S. Ct. 439 (1997), but after oral argument and before a decision was issued, the parties settled and the petition for *certiorari* was dismissed (*Lewis v. Brunswick Corp.*, 523 U.S. 1113, 140 L. Ed. 2d 933, 118 S. Ct. 1793 (1998)).

been rejected by the Supreme Court in *Geier*. For example, the Solicitor General in the *Lewis* brief argued that the existence of the savings clause (section 4311(g)) "makes clear Congress's explicit intent to preserve tort liability." But the *Geier* Court found implied preemption in the presence of the savings clause and rejected the argument that this clause "bar[red] the ordinary working of conflict pre-emption principles." *Geier*, 529 U.S. at 869, 146 L. Ed. 2d at 924, 120 S. Ct. at 1919.

In considering the federal decisions on this matter, we find the Fifth Circuit's opinion in *Lady* persuasive and agree that: "where the Coast Guard has been presented with an issue, studied it, and affirmatively decided as a substantive matter that it was not appropriate to impose a requirement, that decision takes on the character of a regulation and the FBSA's objective of national uniformity mandates that state law not provide a result different than the Coast Guard's." *Lady*, 228 F.3d at 615.

Furthermore, we are not persuaded by the two state court decisions that have held that federal law does not preempt state law in this type of case. See *Moore v. Brunswick Bowling & Billiards Corp.*, 889 S.W.2d 246 (Tex. 1994); *Ard v. Jensen*, 996 S.W.2d 594 (Mo. App. 1999). As these cases represent the minority view on this matter, we believe a finding of preemption is warranted here in order to continue the line of uniformity laid down by the federal courts that have found preemption under the FBSA. Therefore, based on the preceding analysis, we find that Sprietsma's common law tort claims are impliedly preempted by the FBSA.

As a final note, Mercury Marine filed a motion to strike the first five pages of Sprietsma's reply brief insofar as it argued that the preemption defense was unavailable because the boat motor was manufactured in 1988, more than a year before the Coast Guard's 1990 decision not to take regulatory action. Sprietsma's argu-

ment was never addressed or ruled upon by the circuit or appellate courts. Also, Sprietsma did not raise the argument in his brief to this court but raised it for the first time in his reply brief. Under Supreme Court Rule 341(e)(7), points not argued in the appellant's brief are waived and shall not be raised in the reply brief. 177 Ill. 2d R. 341(e)(7). Therefore, this argument is waived. Mercury Marine's motion to strike portions of Sprietsma's reply brief, which was taken with the case, is allowed.

For the foregoing reasons, we affirm the appellate court's judgment that the FBSA preempts Sprietsma's common law claims for failure to install propeller guards.

*Affirmed.*

JUSTICE THOMAS took no part in the consideration or decision of this case.

CHIEF JUSTICE HARRISON, dissenting:

Under the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2), state law must yield to federal law, but neither federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a lower federal court's interpretation. A state court's interpretation of federal law is no less authoritative than that of the federal court of appeals in whose circuit the trial court is located. The only federal court whose interpretation of federal law is binding on the courts of Illinois is the United States Supreme Court. If the courts of this state follow a lower federal court's interpretation of federal law, they do so only because they choose to, not because they must. *Lockhart v. Fretwell*, 506 U.S. 364, 376, 122 L. Ed. 2d 180, 193, 113 S. Ct. 838, 846 (1993) (Thomas, J., concurring).

Notwithstanding the view expressed by former Justice Bilandic in his opinion in *Busch v. Graphic Color*

*Corp.*, 169 Ill. 2d 325, 335 (1996), the most recent decisions of our court have adhered to this view. In the absence of controlling United States Supreme Court precedent, we may "elect" to follow Seventh Circuit precedent construing a federal statute. *Wilson v. Norfolk & Western Ry. Co.*, 187 Ill. 2d 369, 383-84 (1999). We are not required to do so, however, and are free to depart from that precedent whenever we believe it is wrongly decided. *Weiland v. Telectronics Pacing Systems, Inc.*, 188 Ill. 2d 415, 423 (1999). See also *People v. Kokoraleis*, 132 Ill. 2d 235, 293-94 (1989) ("decisions of lower Federal courts are not conclusive on State courts, except insofar as the decision of the lower Federal court may become the law of the case").

Contrary to my colleagues' view, this is not a case where our authority to make an independent interpretation of federal law should yield to considerations of uniformity. If our view of federal law differs from that of the lower federal courts and the conflict proves problematic, the United States Supreme Court may grant review to resolve the conflict. We should not perpetuate an erroneous interpretation of the law merely because it has been endorsed by some lower federal court judges. Uniformity is no virtue if it means being uniformly wrong.

I also disagree with the result the majority reaches on the merits. My colleagues go to enormous lengths to uphold a finding of preemption when they should be doing exactly the opposite. Preemption is disfavored. As our court has previously held, a presumption exists in every preemption case that Congress did *not* intend to supplant state law. *Scholtens v. Schneider*, 173 Ill. 2d 375, 379 (1996).

In ascertaining congressional intent, our inquiry necessarily begins with an analysis of the language of the statute. *Scholtens*, 173 Ill. 2d at 380. The language

employed by Congress here could not be more clear. Section 4311(g) of the FBSA expressly provides:

"[C]ompliance with this chapter or standards, regulations, or orders prescribed under this chapter does not relieve a person from liability at common law or under State law." 46 U.S.C. § 4311(g) (1994).

If we are to give this provision its plain and ordinary meaning, as we must, Mercury Marine's compliance with the standard adopted by the Coast Guard, which was not to require propeller guards, clearly does not bar the common law tort claims asserted against it by Sprietsma in this case. Indeed, it is difficult to see how Congress' intention to preserve such tort claims could have been expressed any more explicitly.

The Supreme Court of Texas (*Moore v. Brunswick Bowling & Billiards Corp.*, 889 S.W.2d 246 (Tex. 1994)) and the Missouri Court of Appeals (*Ard v. Jensen*, 996 S.W.2d 594 (Mo. App. 1999)) have reached the same conclusion on similar facts: the FBSA does not preempt common law tort claims based on failure to install propeller guards. Although our appellate court took a contrary position in *Farner v. Brunswick Corp.*, 239 Ill. App. 3d 885 (1992), that case is premised on a narrow construction of section 4311, which cannot be justified given the broad language Congress employed when it drafted the statute. See *Ard*, 996 S.W.2d at 600. *Farner* should be overruled.

While allowing common law tort claims to go forward may seem to create a tension with the Coast Guard's policy against propeller guards, that is a circumstance we must assume Congress considered when it adopted section 4311(g). If section 4311(g) ultimately proves unworkable when applied as written, that is a matter for Congress and not this court to remedy.

For the foregoing reasons, the judgment of the appellate court affirming the dismissal of plaintiff's complaint should be reversed, and the cause should be remanded to

the circuit court for further proceedings. I therefore dissent.